[Civ. No. 19267. Third Dist. Mar. 29, 1982.]

CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES
CONFERENCE BOARD, Plaintiff and Respondent, v.
ED ZWEIGLE, Defendant and Appellant.

ED ZWEIGLE, Plaintiff and Appellant, v.
SIERRA-NEVADA FOOTHILL DISTRICT COUNCIL OF
CARPENTERS et al., Defendants and Respondents.

**COUNSEL**

William A. White for Plaintiff and Appellant and Defendant and Appellant.

Van Bourg, Allen, Weinberg & Roger and David A. Rosenfeld for Plaintiff and Respondent and for Defendants and Respondents.

**OPINION**

**BLEASE, J.**—Ed Zweigle appeals from a judgment which ruled that both he and Ed Zweigle, Inc., were bound by the 1974-1977 and 1977-1980 Carpenters 46 Northern California Counties Master Agreements and which confirmed and ordered him to comply with an

arbitration award against him "operating as J.E.S. Construction Co." Zweigle contends that the judgment cannot be sustained since both Ed Zweigle, Inc., and J.E.S. Construction Co., Inc., are indispensable parties which were not joined in the proceeding which affected them.

■ We consider whether an employer, a signatory to a collective bargaining agreement which expressly makes arbitrable the question whether the employer has continued to do business under a "change [of] name" or "style [of] business," is bound by the arbitrator's decision that "J.E.S. is in fact Zweigle under a different name and style...." We hold that Zweigle is bound by that decision and by the award to the extent that it affects him and does not operate upon J.E.S. Construction Co. through him. Since the arbitrator has reserved jurisdiction to resolve disputes concerning the award, plaintiff may seek relief properly restricted to Ed Zweigle for the conduct of Zweigle acting as J.E.S. Construction Co. in breach of the agreement. We also affirm the judgment that Zweigle is bound by the 1974-1977 and 1977-1980 collective bargaining agreements, but reverse the judgment as to Ed Zweigle, Inc.

### FACTS

On September 27, 1974, Zweigle, a licensed general building contractor, signed a memorandum agreement with Carpenters 46 Northern California Counties Conference Board (conference board), a voluntary unincorporated association comprised of affiliated local union organizations (one of which is Sierra-Nevada Foothill District Council of Carpenters), in which he "agree[d] to comply with the wages, hours and working conditions set forth in that certain agreement referred to for convenience as the Carpenters 46 Northern California Counties Master Agreement dated June 16, 1974 and terminating June 15, 1977 ... and any modifications, changes, extensions or renewals of or to said Master Agreement[] which may be negotiated by the parties thereto for the term thereof." At the time he entered into the agreement, Zweigle was president of Ed Zweigle, Inc., a corporation of which he and his wife were the sole shareholders. Thereafter, through June of 1977, Zweigle complied with the provisions of the master agreement in regard to wages and benefits and filed the required trust fund contributions, "mostly" on behalf of Ed Zweigle, Inc.

In December 1976, Zweigle was discovered by a union business representative working on a construction project with nonunion carpenters

and a grievance was filed against him. J.E.S. Construction Co. was the general contractor on the project. Zweigle was its "Responsible Managing Employee." The stock of J.E.S. Construction Co. was held in trust for the benefit of his minor children. Zweigle's attorney managed the trust and acted as a corporate officer and director. It leased equipment from Ed Zweigle, Inc., and had many of the same employees. J.E.S.' "seed money" was a $5,000 loan by Zweigle and his wife and the offices of both Ed Zweigle, Inc., and J.E.S. were at Zweigle's residence.

In March 1977, the grievance came before an arbitrator.[1] Both sides were represented by counsel and were afforded a full opportunity to present their cases. The arbitrator "conclude[d] that J.E.S. [was] in fact [appellant] under a different name and style and that the labor Agreement properly applie[d] to its construction activities."[2] He ordered appellant "operating as J.E.S. Construction Company" to "cease and desist from further violations of the Master Agreement," to "submit to audit of its payroll and other records to determine whether and to what extent [he had] failed to comply," and to "make restitution of wages and benefits resulting from [such] failure ..." The arbitrator also reserved jurisdiction "to resolve any dispute arising as to the effectuation of this Award."

On May 13, 1977, Zweigle filed a complaint in the Superior Court of Nevada County seeking a declaration that he was not bound by the memorandum agreement he signed beyond June 15, 1977, or at all by the master agreement referred to therein, and also seeking an injunction preventing respondents from "proceeding with the arbitration procedure" or "[e]nforcing any ... arbitration awards obtained" under the master agreement. On August 8, the conference board filed a petition for confirmation of the arbitration award in the Superior Court of San Francisco County. This action was transferred by stipulation of the parties to the Nevada County Superior Court and the cases were consolidated. The judgment and appeal followed.

---

[1]The 1974-1977 master agreement provided, in pertinent part, that "[a]ny dispute concerning any application or interpretations in the event that a dispute [arose] on a job" should first be reported to a union business agent for adjustment, then referred to a permanent board of adjustment, and then, upon the failure of these procedures to resolve the dispute, submitted to one of two named arbitrators.

[2]The master agreement was binding upon "each individual employer regardless of whether or not he or it changes the name or style or address of his or its business."

## DISCUSSION

### I

We consider first whether the arbitrator's award is fatally compromised by the failure to join an indispensable party to either the arbitration or enforcement proceedings and, second, whether, under the collective bargaining agreement, the arbitrator may determine the alter ego status of J.E.S. Construction Co.

### A.

### THE FAILURE TO JOIN AN INDISPENSABLE PARTY

The arbitrator's award determined that J.E.S. Construction Co. was Zweigle and issued an order against Zweigle "operating as J.E.S. Construction Co."

Zweigle attacks the judgment confirming the arbitration award claiming that *he* is not bound by the arbitrator's decision, because J.E.S. Construction Co., Inc., was not joined as a party to the arbitration or enforcement proceedings. He relies on decisions which hold that an indispensable party to an arbitration or enforcement proceeding is not bound by a decision to which it was not joined. (*Retail Clerks Union* v. *Thriftimart, Inc.* (1963) 59 Cal.2d 421 [30 Cal.Rptr. 12, 380 P.2d 652]; *Retail Clerks Union* v. *L. Bloom Sons Co.* (1959) 173 Cal. App.2d 701 [344 P.2d 51]; *Unimart* v. *Superior Court* (1969) 1 Cal. App.3d 1039, 1045 [82 Cal.Rptr. 249]; see also *Southern Cal. Pipe Trades Dist. Council No. 16* v. *Merritt* (1981) 126 Cal.App.3d 530 [179 Cal.Rptr. 794].)

The leading California case on the effect of a failure to join an indispensable party to actions seeking confirmation of an arbitrator's award is *Retail Clerks Union* v. *Thriftimart, Inc., supra*, 59 Cal.2d 421. In *Thriftimart*, a wholly owned subsidiary of Thriftimart (MORE) successfully challenged a judgment confirming an arbitration award which affected MORE's relations with its employees because it was not joined as a party to the arbitration proceeding. The court said: "The validity of MORE's contention that the decision of the arbitrator in a proceeding to which it was not a party and without notice to or consent by MORE is a denial of due process of law depends on whether the arbitrator's award affects MORE. In an attempt to forestall adjudication of this is-

sue, Local 770 'concedes that the judgment in its present form applies to and can be enforced only against the party Thriftimart.' It is obvious, however, that enforcement of the award against Thriftimart would be enforcement against MORE, for the award provides that the contract between Thriftimart and Local 770 covers MORE and its employees." (*Id.*, at p. 425.) Relying upon *Retail Clerks Union* v. *L. Bloom Sons Co., supra,* 173 Cal.App.2d 701, the court aiso said that in *Bloom* "as in this [case] the union did not establish that the subsidiary was the *alter ego* of the parent corporation as a prerequisite to enforcing the parent's agreement against the subsidiary. 'The proper forum for that determination is, of course, a court of law.' " (*Retail Clerks Union* v. *Thriftimart, Inc., supra,* 59 Cal.2d at p. 426.)

These decisions control this case insofar as the arbitrator's award affects J.E.S. Construction Co. through Zweigle. *Thriftimart* and *Bloom* hold, on their facts, that, for reasons of due process of law, a separately incorporated entity may not be bound to an arbitration agreement as an alter ego of the signatory to the agreement unless the entity is made a party to a judicial proceeding at which the issue is determined. Similarly, "an arbitrator has no power to determine the rights and obligations of one who is not a party to the . . . arbitration proceedings." (*Unimart* v. *Superior Court, supra,* 1 Cal.App.3d at p. 1045.)

J.E.S. was not a signatory to the collective bargaining agreement executed by Zweigle or a party to the arbitration proceeding which resulted in an award ordering Zweigle "operating as *J.E.S. Construction Company*" to comply with the master agreement, submit to an audit of its records and make restitution for any past noncompliance following the filing of the grievance. Accordingly, the arbitrator's award is not binding upon J.E.S. Construction Co., nor may it affect J.E.S. through Zweigle.[3] The effect of the award upon Zweigle, however, requires different treatment.

It is Zweigle's implied claim that the failure to join J.E.S. Construction Co. as a party to the arbitration proceeding is fatal to the jurisdiction of the arbitrator over the subject matter of the action. If this issue were controlled by analogy to the law governing joinder in a civil action (Code Civ. Proc., § 389; see *Southern Cal. Pipe Trades*

---

[3]The award does not affect J.E.S. Construction.Co. through Zweigle to the extent that Zweigle is entitled to information from the J.E.S. records and the records are relevant to a determination of the sanctions against Zweigle for *his* violation of the contract operating as J.E.S. Construction Co.

*Dist. Council No. 16* v. *Merritt, supra,* 126 Cal.App.3d 530, and *Motores De Mexicali* v. *Superior Court* (1958) 51 Cal.2d 172, 176 [331 P.2d 1]), the answer is that the absence of an indispensable party does not deprive the arbitrator of power to render a decision as to parties before it or the court the power to enforce the decision. (*Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354 [140 Cal.Rptr. 744]; and see *Amalgamated Clothing, etc.* v. *Ratner Corp.* (9th Cir. 1979) 602 F.2d 1363.) "[F]ailure to join an 'indispensable' party is not 'jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party, the court still has the power to render a decision as to the parties before it which will stand. [Citations.] It is for reasons of equity and convenience, and not because it is without the power to proceed, that the court should not proceed with a case where it determines that an 'indispensable party' is absent and cannot be joined." (Fn. omitted.) (*Kraus* v. *Willow Park Public Golf Course, supra,* 73 Cal.App.3d at p. 364; see also 3 Witkin, Cal. Procedure (1981 supp.) §§ 160B-160C, pp. 45-48.)

But it is "[f]ederal law, fashioned from the policy of our national labor laws, [which] controls. [Citation.] State law may be utilized so far as it is of aid in the development of correct principles or their application in a particular case, [citation] but the law which ultimately results is federal." (*John Wiley & Sons* v. *Livingston* (1964) 376 U.S. 543, 548 [11 L.Ed.2d 898, 904, 84 S.Ct. 909].) *Thriftimart* recognized that federal principles govern "whether there can be a valid arbitration award in the absence of a party directly affected by the award." (*Retail Clerks Union* v. *Thriftimart, Inc., supra,* 59 Cal.2d at p. 426.) It relied on *Bloom* because "'[u]ntil it is elaborated by the federal courts we assume [the federal law] does not differ significantly from our own law.' [Citation.]" (*Ibid.*)

The *Thriftimart* and *Bloom* cases arose as challenges *by* the disaffected corporate entities to the enforcement of an arbitrator's award affecting them. They held that the arbitrator was deprived of subject matter jurisdiction to render an award concerning the alter ego status of a subsidiary corporation because that subject was exclusively reserved to the courts. But neither case concerned a contract which, as here, expressly makes arbitrable that issue. As we shall show, *Zweigle* is bound to the contract which *he* signed making arbitrable the alter ego issue. For reasons of federal law, he may not trade upon the deficiencies in joinder to defeat *his* contractual liability.

B.

THE JURISDICTION OF COURT AND ARBITRATOR

*Thriftimart* and *Bloom* rely on the general proposition that "'[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. . . .'" (*Retail Clerks Union* v. *Thriftimart, Inc., supra,* 59 Cal.2d at p. 426, relying on *Steelworkers* v. *Warrior & Gulf Co.* (1960) 363 U.S. 574, 582-583 [4 L.Ed.2d 1409, 1417, 80 S.Ct. 1347].) These cases do not control, however, when the *contract* makes arbitrable the alter ego issue.

It is a fundamental tenet of federal labor law that "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Fn. omitted.) (*Steelworkers* v. *Warrior & Gulf Co., supra,* 363 U.S. at pp. 582-583.) Whether or not the parties are bound to arbitrate, as well as what issues they must arbitrate, is a matter to be determined by the court on the basis of the contract entered into by the parties. (See *John Wiley & Sons, Inc.* v. *Livingston* (1964) 376 U.S. 543, 546-547 [11 L.Ed.2d 898, 902-903, 84 S.Ct. 909]; *Leyva* v. *Certified Grocers of California, Ltd.* (9th Cir. 1979) 593 F.2d 857, 861.) In the *absence of* a contrary provision in the collective bargaining agreement, the existence and scope of a contract to arbitrate are questions for the court. (See *Leyva* v. *Certified Grocers of California, Ltd., supra,* 593 F.2d at p. 891.) However, the issue of arbitrability itself may be arbitrated if the contract so provides (*Amalgamated Clothing, etc.* v. *Ratner Corp., supra,* 602 F.2d 1363) including the issue of the alter ego status of a successor corporation (*Local No 6, B., M. & P. Int. U. of Am.* v. *Boyd G. Heminger, Inc.* (6th Cir. 1973) 483 F.2d 129.)

The contract in this case is to be distinguished from those in *Thriftimart* and *Bloom*. It makes arbitrable "[a]ny dispute concerning any application or interpretations [of the contract] in the event that a dispute [arose] on a job. . . ." (Cf. *Amalgamated Clothing, etc.* v. *Ratner Corp., supra,* 602 F.2d at p. 1370; see also *Local No. 6, B., M. & P. Int.*

*U. of Am.* v. *Boyd G. Heminger, Inc., supra,* 483 F.2d at pp. 130-131.) It binds "each individual employer regardless of whether or not he or it changes the name or style or address of his or its business."

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Steelworkers* v. *American Mfg. Co.* (1960) 363 U.S. 564, 567-568 [4 L.Ed.2d 1403, 1406-1407, 80 S.Ct. 1343].)

The combination of the general arbitrability clause and the "style" of business clause makes the issue whether Zweigle is operating under a different "style" subject to arbitration. The general interpretative arbitrability clause empowers the arbitrator to determine whether an alter ego corporation is a new "style" of business. The second clause submits the factual determination to the arbitrator. In *Local No. 6, B., M. & P. Int. U. of Am.* v. *Boyd G. Heminger, supra,* 483 F.2d 129, the Sixth Circuit Court of Appeals held, on the basis of a general arbitrability clause, that the arbitrator should have been permitted to determine whether an employer violated a collective bargaining agreement by creating a sham corporation, as the union alleged. (*Id.,* at p. 131.) The court said: "[T]he burden of the unions was not to present a prima facie case on the creation of a sham or alter ego corporation by the employer. The burden was to show that, assuming there was a sham or alter ego corporation ... there would then be a violation of the collective bargaining agreements. We have no doubt that such an asserted violation would be within the scope of the ... agreements. ..." (*Id.,* at p. 131.) *Heminger* was followed in *Iron Workers, Local 790* v. *Bostrom-Bergen Metal Products* (N.D.Cal. 1980) 90 CCH Lab. Cas. ¶12,360 [105 L.R.R.M. 2633] and *Ben Gutman Truck Serv.* v. *Teamsters Local No. 600* (E.D.Mo. 1980) 484 F.Supp. 893.

The case of *Amalgamated Clothing, etc.* v. *Ratner Corp., supra,* 602 F.2d 1363, is instructive. There, a collective bargaining agreement contained a successorship clause which provided that if the employer merged or consolidated with, or its business was acquired by another entity, the employer would remain bound by the agreement and by actions of the successor corporation. As a result of a corporate reorganization a subsidiary was created which employed all of the personnel covered by the original collective bargaining agreement. The court held that the Ratner Corporation was bound by the successorship

clause and that the issue was arbitrable whether the creation of a subsidiary to which it transferred its manufacturing operations violated the agreement "either directly or through its subsidiaries . . . ."

This case differs from *Ratner* in that the arbitrability of the contract is itself a matter of arbitration. It draws sustenance from *Ratner* in that the underlying issue, whether J.E.S. Construction Co. was a new "style" by which Zweigle was doing business in violation of the collective bargaining agreement, is subject to arbitration.

We hold that Zweigle is bound by the arbitrator's determination that J.E.S. Construction Co. is but a "style" by which he is doing business and that Zweigle may be sanctioned for violations of the contract by him operating as J.E.S. Construction Co. However, in keeping with *Thriftimart* and *Ratner*, the arbitrator's award may not operate upon J.E.S. Construction Co. and to the extent that it does it is invalid.

## II

█ The failure to join an indispensable party also invalidates the portion of the declaratory judgment which holds that Ed Zweigle, *Inc.*, is bound to the 1974-1977 and 1977-1980 master agreements. It is clear the relief granted profoundly affects the corporation's relations with its employees. (See *Bank of California* v. *Superior Court* (1940) 16 Cal.2d 516, 521 [106 Cal.Rptr. 879], quoted in *Serrano* v. *Priest* (1976) 18 Cal.3d 728, 753 [135 Cal.Rptr. 345, 557 P.2d 929].) Such a defect may be raised at any time. (*Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 214 [137 Cal.Rptr. 118].) It may be, as respondents suggest, that Ed Zweigle, Inc., is estopped to deny that it is bound by the master agreements because of its past compliance (see, e.g., *Carter* v. *CMTA-Molders & Allied Wkrs. Health, etc.* (N.D.Cal. 1980) 489 F.Supp. 704), but the likelihood that it would lose on the merits is certainly no basis for failing to make it a party to the action. Respondents were free to file a cross-complaint in the action seeking a declaration as to Ed Zweigle, Inc. (Code Civ. Proc., § 1060), but they did not do so.

Insofar as it declares that Zweigle as an individual is bound by the master agreements, however, the judgment must be affirmed.[4] As to

---

[4] Zweigle argues that the evidence adduced at the trial establishes only that Ed Zweigle, Inc., engaged in operations affecting interstate commerce, not Zweigle individually. If federal law were inapplicable, of course, the federal cases would have no effect. Else-

himself, Zweigle has not urged on appeal the position he urged most strenuously below, i.e., that he was not afforded any notice that by signing the memorandum agreement he bound himself to all the provisions of the 1974-1977 master agreement and to its successor. He has therefore waived the point. (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 422, fn. 3 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1]; see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, pp. 4391-4393.) We note, moreover, that in *Scenic Land Properties, Inc.* v. *Carpenters, Local 162* (N.D.Cal. 1979) 87 CCH Lab. Cas. ¶11,690 [103 L.R.R.M. 2127], a case involving the same master agreements as those with which we are concerned, the federal district court for the Northern District of California held that an employer was bound by his signing of a memorandum agreement to both the 1974-1977 master agreement and to its 1977-1980 successor, in the absence of an effective termination in accordance with the provisions of the agreements. (See also *Const. Teamsters, etc.* v. *Con Form Const. Corp.* (9th Cir. 1981) 657 F.2d 1101.)

Conceding that a letter by which he attempted to terminate the collective bargaining agreement was not timely, Zweigle suggests that his service on respondents of the summons and complaint for his action for declaratory relief during the termination period was sufficient notice of his intention. However, this theory was never tendered at trial and was plainly inadequate as grounds for Zweigle's motion for a new trial.

■ Finally, for the first time, Zweigle objects to the enforcement of the collective bargaining agreement as a "prehire" agreement (i.e., an agreement with a union that has not attained majority status in the employer's labor force, permissible in the construction industry (§ 8(f), 73 Stat. 545, 29 U.S.C. § 158(f)). We need not reach the question whether a union may "enforce" such an agreement by obtaining declaratory relief in regard to it, since it is a new argument on appeal. "The general rule confining the parties upon appeal to the theory advanced below is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial.' (*Panopulas* v. *Maderis* (1956) 47 Cal.2d 337, [340-341]. . . .)" (*Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].)

where in the record, though, there is testimony that Ed Zweigle bought lumber from a Nevada concern. There is substantial evidence that *he* was engaged in interstate commerce.

As is more fully set forth above, the judgment is affirmed insofar as it declares that Zweigle is bound to the 1974-1977 and 1977-1980 carpenters master agreements and insofar as it confirms the arbitrator's determination that J.E.S. Construction Co. *is* Zweigle as another "style" of business and insofar as it affects Zweigle for the contract violations of Zweigle operating as J.E.S. Construction Co. In all other respects, the judgment is reversed.

Evans, Acting P. J., and Reynoso, J.,* concurred.

A petition for a rehearing was denied April 28, 1982, and the opinion was modified to read as printed above.

*Assigned by the Chairperson of the Judicial Council.