LABORERS' LOCAL UNION NOS. 472 AND 172, UNINCORPORAT-ED LABOR ORGANIZATIONS; LABORERS' LOCAL UNION NOS. 472 AND 172 WELFARE AND PENSION FUNDS, UNIN-CORPORATED TRUST FUNDS; ZAZZALI, ZAZZALI & WHIP-PLE, P.A.; AND ARBITRATOR J. MALKIN, PLAINTIFFS-AP-PELLANTS, v. INTERSTATE CURB & SIDEWALK; MEYER BROTHERS, INC.; UNIVERSAL UTILITY, INC.; AND CAR-DELL CONSTRUCTION CO., DEFENDANTS, AND CARDELL ENTERPRISES CORP., DEFENDANT-RESPONDENT.

Argued May 3, 1982—Decided August 9, 1982.

458

*James R. Zazzali* argued the cause for appellants (Zazzali, Zazzali & Kroll, attorneys; *Albert G. Kroll,* of counsel; *Francis J. Vernoia,* on the brief).

*Karl R. Meyertons* argued the cause for respondent.

The opinion of the Court was delivered by

HANDLER, J.

This case presents the question whether a nonsignatory party to a collective bargaining agreement is subject to the binding arbitration provisions of that agreement as the alter ego of the signatory party. More specifically, we must determine whether an arbitrator had the authority to decide whether there was such an identity between the signatory and nonsignatory parties

as to bind the latter to an arbitration award under the agreement.

Universal Utility, Inc. (hereinafter "Universal") is a party to a collective bargaining agreement with Laborers Local Unions 472 and 172. Pursuant to Articles 15, 16 and 17 of this agreement, Universal must pay contributions to the unions' Welfare Fund, Pension Fund, and Safety Education and Training Fund. These contributions are used to provide certain medical and pension benefits to covered employees.

In 1978, a dispute arose regarding the payment of these contributions.[1] Specifically, the unions alleged that Universal was using various alter ego corporations to perform work subject to the collective bargaining agreement, thereby evading Universal's pension and welfare fund obligations under that agreement.

After informal efforts to resolve the dispute were unsuccessful, the matter was sent to arbitration. At a hearing scheduled on July 26, 1979, both the unions and the funds were represented by counsel, but no one appeared for either Universal or its alleged alter ego corporations, Cardell Enterprises and Cardell Construction Company (hereinafter "Cardell").[2]

---

[1] This dispute was actually the second disagreement that arose between these parties regarding these payments. Approximately one year earlier, the unions alleged that Universal had been delinquent in making payments to these funds. This earlier dispute was also resolved through arbitration, and neither party contests the propriety or the correctness of that earlier arbitration award, although the unions now maintain that it is not being fully complied with.

[2] The arbitrator expressly found that Universal's failure to appear at the hearing constituted a deliberate attempt to prevent a full hearing on the merits. He based this conclusion on the fact that one day after the hearing, he received a letter from Universal's attorney indicating that it would not attend the arbitration hearing and would refuse to recognize the validity of any determination arising therefrom. At that point Universal took the position that the matter of its obligations to the welfare and pension funds was fully resolved by the earlier arbitration award. Universal has not submitted a

The arbitrator found that Universal and the Cardell companies were, in fact, the same business enterprise. In reaching this conclusion, he noted that all three companies were located at the same address, that all had the same telephone numbers, and that two secretaries answer the telephone "Cardell" but when asked for Universal, each responds that it is the same company.[3] He further found that Universal had concealed the use of its employees through its creation of alter ego corporations, and that it had been conducting its business and using employees entitled to the benefits of the funds in such a manner as to circumvent its obligations under the collective bargaining agreement. On the basis of these findings, the arbitrator ruled that the trustees of the funds were to audit the payroll and other records of Universal and its alter ego corporations in order to determine the amount of contributions owed by Universal to the various funds. Jurisdiction was retained.

. The unions and funds later filed a complaint, seeking to confirm the arbitrator's awards, pursuant to *N.J.S.A.* 2A:24-7.[4] The complaint alleged that the court had jurisdiction both under the New Jersey statute governing arbitration and awards, *N.J.*

---

brief or raised this issue on appeal. Moreover, we note that even if it had, this argument is without merit. As the arbitrator explained in his opinion, the earlier award was entered against Universal, with jurisdiction retained pending completion of an audit of all records pertaining to payment to the funds. The new grievance raised by the unions was that they could not complete the audit to date because employees covered by the collective bargaining agreement and doing work subject thereto were concealed in the alter ego companies.

[3]In addition, the unions submitted evidence indicating that at least two of the highest ranking officers in Cardell Enterprises were in high official positions of Universal.

[4]Although the central issues in this case involve the second arbitration award, the earlier award is also a source of contention among the parties. More specifically, the plaintiff unions allege that Universal had refused to comply with the terms of the earlier award. Moreover, the terms of the earlier award are relevant insofar as they affected the award at issue. See note 2, *supra*.

*S.A.* 2A:24–1 *et seq.*, and under 29 *U.S.C.* § 185(a), more commonly known as § 301 of the federal Labor Management Relations Act. Further, it alleged that the defendants, Universal and the two alleged alter ego corporations, had refused to comply either with their contractual obligations or the arbitrator's awards. Universal answered the complaint by admitting the court's jurisdiction under *N.J.S.A.* 2A:24–7 but denying it under the Labor Management Relations Act. Universal further contended that it was no longer an operating company and, therefore, no longer subject to the collective bargaining agreement; that it made all due contributions to the funds, with the exception of the amount awarded in the first arbitration; and that that amount had been tendered but not accepted. Finally, Universal contended that it could not be bound by the second arbitrator's award because he was without jurisdiction to hear the matter. The Cardell defendants responded by denying the arbitrators' jurisdiction and adding that, as to them, the second set of arbitration hearings lacked due process.

After a hearing at which all the parties were represented, the Chancery Division confirmed both arbitration awards. On appeal, the Appellate Division reversed, holding that, in the absence of proof of the existence of a collective bargaining agreement to which the alleged alter ego corporations were a party and signatory, and without proof of any party's consent, in the contract or otherwise, to submit to arbitration the issue of the unity of identity among the parties, the arbitrator was without authority to hear or determine such questions. Accordingly, it vacated and set aside those portions of the Chancery Division's order that confirmed the second arbitrator's award and directed enforcement thereof, and that directed the payment of all auditing fees, as well as the payment of the sum of $500.00 to the arbitrator. We granted the unions' petition for certification. 88 *N.J.* 492 (1981).

We now affirm the Appellate Division to the extent that it held the arbitrator had no jurisdiction to determine the question whether any party, other than Universal, was subject to the

binding arbitration terms of the agreement. However, it erred in vacating the arbitration award. The proper course is to remand this matter to the Chancery Division to have that court decide the issue of the identity among the defendant corporations. If the court determines that there is identity among defendants, then it must decide whether Cardell is bound by the arbitration award, despite its nonparticipation in the arbitration proceedings.

■ At issue in this case is not whether either of the Cardell companies was the alter ego of Universal but, rather, whether the arbitrator had the authority to decide that question. The arbitrator's jurisdiction to determine whether an entity other than a signatory party can be subject to the binding arbitration provisions of a collective bargaining agreement will depend upon what the actual parties to the contract have agreed should be submitted to arbitration. Recently, we stated that

in the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute. Subsumed in this principle is the proposition that only those issues may be arbitrated which the parties have agreed shall be. Stated another way, the arbitrator's authority is circumscribed by whatever provisions and conditions have been mutually agreed upon. Any action taken beyond that authority is impeachable. [*In the Matter of Arbitration Between Grover*, 80 *N.J.* 221, 229 (1979)]

■ In the absence of an express contract provision conferring authority on the arbitrator, it is uniquely within the province of the courts, and not arbitrators, to make the initial and threshold determination regarding the arbitrability of a particular issue. *Grover; Aysseh v. Lawn*, 180 *N.J.Super.* 391 (Ch.Div. 1981). See generally Annot., "Collective Labor Contract—Arbitration," 24 *A.L.R.2d* 752, 766 (1952).

■ The parties in this case recognize that the collective bargaining agreement does not expressly vest in the arbitrator the authority to determine who, other than the signatory parties, can be bound by its compulsory arbitration terms. Accordingly, the proper course regarding arbitrability, as reflected in the collective bargaining agreement between Universal and the

unions, is to remand the matter to the Chancery Division for a hearing at which the parties may adduce the relevant facts that bear upon the question of whether the Cardell companies are identical to Universal and whether the collective bargaining agreement reflects a mutual understanding that the Cardell companies should be bound by the binding arbitration provisions of the agreement.[5]

Assuming the Cardell companies are found to be alter egos of Universal, the Chancery Division must then decide whether those companies are bound by the arbitration award, even though they failed to participate in the arbitration proceedings. The fact that the Cardell companies were not signatory parties to a collective bargaining agreement with the unions does not necessarily preclude their being bound by an arbitrator's decision. For example, successor corporations that acquired their predecessors through bona fide mergers, acquisitions or similar transactions have been held to be bound, under certain circumstances, by some of the provisions in a collective bargaining agreement made by the predecessor and the union.

[5]Both Universal and the Cardell companies have challenged the jurisdiction of New Jersey courts to determine the arbitrability of disputes regarding the alleged identity of the various corporations. Universal has challenged only the jurisdiction to decide the matter under § 301 of the Labor Management Relations Act. If, by this challenge, Universal contends that the courts of this State lack the power to apply federal law, its contention is without merit. See *Teamsters Union v. Lucas Flour Co.*, 369 *U.S.* 95, 82 *S.Ct.* 571, 7 *L.Ed.2d* 593 (1962); *Dowd Box Co. v. Courtney*, 368 *U.S.* 502, 82 *S.Ct.* 519, 7 *L.Ed.2d* 483 (1962); *Textile Workers Union v. Lincoln Mills*, 353 *U.S.* 448, 77 *S.Ct.* 912, 1 *L.Ed.2d* 972 (1958). In its answer, Cardell denied the jurisdiction of New Jersey courts to determine this matter under either New Jersey or federal law. It does not repeat its argument on appeal but, rather. now asserts that a vital jurisdictional element was missing in that there was no contractual agreement between Cardell and the unions and, therefore, no authority vested in an arbitrator to hear the matter. Furthermore, it contends that the trial court erred by affirming the award in the face of a challenge to the arbitrator's jurisdiction to hear the matter initially. This argument speaks not to the statutory jurisdiction of the New Jersey courts to decide this issue, but to the merits of the controversy, namely, whether the arbitrator exceeded his authority in hearing this dispute.

See, e.g., Golden State Bottling Co. v. N.L.R.B., 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); N.L.R.B. v. Burns International Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). See generally Note, "Contractual Successorship: The Impact of Burns," 40 U.Chi.L.Rev. 617 (1973). Moreover, there are cases where a nonsignatory party to a contract with a union has been held bound by that contract where the party is a new employer and found to be the alter ego of the signatory party to the agreement. See Southport Petroleum Co. v. N.L.R.B., 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718 (1942); Shultz v. Mack Farland & Sons Roofing Co., 413 F.2d 1296 (5 Cir. 1969); N.L.R.B. v. Herman Bros. Pet Supply, Inc., 325 F.2d 68 (6 Cir. 1963); N.L.R.B. v. Royal Oak Tool & Mach. Co., 320 F.2d 77 (6 Cir. 1963); N.L.R.B. v. United States Air Conditioning Corp., 302 F.2d 280 (1 Cir. 1962). Consistent with these cases, New Jersey law recognizes that, in appropriate circumstances, a separate corporate form will be disregarded. See Lyon v. Barrett, 89 N.J. 294 (1982); Irving Investment Corp. v. Gordon, 3 N.J. 217 (1949); Yacker v. Weiner, 109 N.J.Super. 351 (Ch.Div.1970), aff'd o.b., 114 N.J.Super. 526 (App.Div.1971).

▮▮▮ If a party bound to arbitrate chooses to ignore the arbitration and await an action upon the award, it takes the risk that it will be found obliged to arbitrate and, hence, bound by the award. Battle v. General Cellulose Co., Inc., 23 N.J. 538, 543–44 (1957). Recently, we have outlined the options of a party who denies the existence of a contractual obligation to arbitrate:

> Defendant could have objected to arbitration of the coverage issue and protected its position in a number of ways. It could have instituted an action for a judicial decision on that issue and requested that the arbitration be stayed. Cf. Battle v. General Cellulose Co., Inc., 23 N.J. 538 (1957), where the judicial proceeding was instituted at the conclusion of the arbitration in which the objecting party had refused to participate. See Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 155 (1978). Defendant also had the choice of making an objection to the propriety of the arbitration on the ground of no coverage and participating in the arbitration proceeding under protest to decide the other two questions. See Polshek & Associates v. Bergen Cty. Iron

*Works*, 142 *N.J.Super.* 516, 523 (Ch.Div.1976). Use of either of these procedures would have preserved the issue of arbitrability for the court. [*Grover*, 80 *N.J.* at 230]

Given the availability of several ways that a party may protect its position in an arbitration proceeding, the contract need not have specifically provided that the arbitration could proceed without the consent of one party in order to bind that party. See *Dist. 65, R.W.D.S.U. v. Paramount Surg. Sup. Co.*, 117 *N.J.Super.* 125, 127–28 (App.Div.1971).

■ We therefore hold that the arbitration award will not be binding on Cardell if it is found not to be an alter ego of Universal. However, if the Chancery Division determines that Cardell was the alter ego of Universal, then the arbitrator's exercise of jurisdiction to determine the merits of the contract dispute was proper and the award was binding upon Cardell as well as Universal.

Cardell makes the additional claim that it was not given adequate notice of the arbitration proceedings and, therefore, a confirmation of the arbitration award against it would deny it due process of the law.

■ The law is clear that if the Cardell companies and Universal were, in fact, the same corporate entity, or sufficiently identical, then adequate notice and service of process upon Universal would constitute adequate notice and process upon Cardell so as to meet the requirements of procedural due process. See *Hoagland v. Springer*, 75 *N.J.Super.* 560 (App.Div.), aff'd, 39 *N.J.* 32 (1962); *Paterson v. Fargo Realty Inc.*, 174 *N.J.Super.* 178 (Passaic County Ct.1980); *Taca International Airlines, Inc. v. Rolls Royce, Ltd.*, 84 *N.J.Super.* 140 (Law Div.1964). hence, if the Chancery Division holds that there was an identity among the corporations, the notice issue is without merit and the arbitrator's awarded should stand.

Accordingly, the judgment of the Appellate Division is affirmed as modified by this opinion.

O'HERN, J., concurring in part, dissenting in part.

The attitude of courts about alternate dispute settlement techniques recalls Mark Twain's quip about the weather—"Everybody talks about it but nobody ever does anything about it."

In my judgment that is the effect of the majority's decision. We frequently express preference for a policy favoring arbitration. *Ohio Cas. Ins. Co. v. Benson*, 87 *N.J.* 191, 196 (1981); *Barcon Associates v. Tri-County Asphalt Corp.*, 86 *N.J.* 179, 186 (1981). We need to give that preference meaning.

The tortured history of these proceedings, involving a sum perhaps not in excess of $10,000, demonstrates how far we have strayed from the goal of providing a "final disposition, in a speedy, inexpensive, expeditious and perhaps less formal manner, of the controversial differences between the parties." *Barcon Associates, supra*, 86 *N.J.* at 187. The issue here was simple. Did an employer use a shell corporation to conceal its liability for union fringe benefits for its workers. No great amount of skill is required to resolve that issue. The union sought to resolve the issue by an arbitration commenced in July of 1979. The arbitrator entered an interim order on August 1, 1979 directing that the employer and its alleged alter ego corporations permit the union and trustees of the employees' pension funds to audit payroll and other pertinent financial records. The union promptly obtained confirmation of that order from the Superior Court under *N.J.S.A.* 2A:24–7. Now, two and a half years later, the majority remands the matter to the trial court for a hearing on the issue of arbitrability.

> ... Arbitration can attain its goal of providing final, speedy and inexpensive settlement of disputes only if judicial interference with the process is minimized; it is, after all, "meant to be a substitute for and not a springboard for litigation." [*Barcon Associates v. Tri-County Asphalt Corp., supra*, 86 *N.J.* at 187 (1981)].

The problem with this case is a hangup on the near metaphysical question of identity. The Appellate Division concluded that since there was no identity between the parties there could be no arbitration. This Court recognizes that there may be identity but says that the Superior Court must try that issue.

The result is an even more cumbersome procedure than the bifurcated process that we condemned in *Ohio Cas. Ins. Co. v. Benson*, 87 *N.J.* 191 (1981).

Putting aside the fictional concepts of corporate identity, the reality of the arbitrator's order was to direct the alter ego corporations to produce their books and records for inspection and review. Under *N.J.S.A.* 2A:24–6 the arbitrator could subpoena "any person as a witness and, in a proper case, to bring with him any book or written instrument." By the narrowest view of his powers, the arbitrator could enter an award against the signatory party for the full amount of the liability disclosed. This award could then be pursued in a third-party claim against the alter ego corporation. *Yacker v. Weiner*, 109 *N.J.Super.* 351 (Ch.Div.1970).

How can public policy possibly be served by such a procedure? There is no doubt that a non-signatory party can be compelled to arbitrate a labor dispute. *Wiley & Sons v. Livingston*, 376 *U.S.* 543, 84 *S.Ct.* 909, 11 *L.Ed.*2d 898 (arbitration provisions of union collective bargaining agreement survive dissolution of employer corporation and are operative against successor corporation). It has also been the policy of this State to recognize that collective bargaining agreements are controlled by substantive federal law and create practically a "private law" of their own.

> ... The law of arbitration in the labor field is practically *sui generis*. Id., *passim*. In that area "[t]he clear thesis is that the judicial role should be a very limited one, *considerably less* even than the restricted court function in commercial arbitration matters." [*Moreira Constr. Co., Inc. v. Wayne Tp.*, 98 *N.J.Super.* 570, 580 (App.Div.1968), quoting *Standard Motor Freight v. Local Union No. 560*, 49 *N.J.* 83, 95 (1967) (emphasis added)].

The issue here is similar to the coverage issues analyzed in *Perez v. American Bankers Ins. Co.*, 81 *N.J.* 415 (1979) and *Ohio Cas. Ins. Co. v. Benson, supra*. In those cases, the parties agreed to arbitrate an uninsured motorist's coverage based upon a phantom vehicle contact. We said:

> The arbitrable issue subsumes the subordinate issue, whether a hit and run driver existed. Common sense and practicality militate against a technical construction that would cause unnecessary delay.... The logic of fairness and

economy suggests a one-stop proceeding. [*Ohio Cas. Ins. Co. v. Benson*, 87 *N.J.* at 199]

Such a rule here would be more consistent with the federal policy of settling labor disputes through the indispensable agency of arbitrators whose "knowledge of the customs and practices . . . of a particular industry" enables him "to bring of a problem." *United Steelworkers v. Enterprise Corp.*, 363 *U.S.* 593, 596–97, 80 *S.Ct.* 1358, 1360–1361, 4 *L.Ed.2d* 1424, 1428 (1960); see also *Pine Mfg. v. Intern. Ladies Garment Workers*, 6 *Mass. App.* 957, 383 *N.E.2d* 543 (1978) (arbitrator has power to decide whether non-signatory corporation is bound by predecessor's collective bargaining agreement with employees).

Proper regard for the limited judicial role in this area can be accommodated with due regard for an alter ego's right to have the courts determine substantive arbitrability by modifying the rule of *Battle v. General Cellulose Co.*, 23 *N.J.* 538 (1957), to require the opponent of arbitration to seek prior judicial determination of arbitrability when the subordinate issue and the arbitrable issue are subsumed by the same facts. See *Pine Mfg. v. Intern. Ladies Garment Workers, supra.* That would be consistent with our procedural ruling in *Barcon Associates, Inc. v. Tri-County Asphalt Corp., supra*, requiring prehearing disposition of bias charges under penalty of waiver.

The California Court of Appeals, while adhering to the view that normally an arbitrator can render an award concerning alter ego status only if authorized by the parties, left open the question whether an arbitration award would bind an alter ego entity that had adequate notice of the proceedings but failed to file a timely response. *See So. Cal. Pipe Trades, Dist. Council v. Merritt*, 126 *Cal.App.3d* 530, 179 *Cal.Rptr.* 794 (1981). See also *Carpenters 46 No. Cal. Counties v. Zweigle*, 130 *Cal.App.3d* 337, 181 *Cal.Rptr.* 805 (1982) (alter ego issue arbitrable under contract but arbitrator's award not enforced against third party not noticed in arbitration or served in enforcement). *But see Glasser v. Price*, 313 *N.Y.S.2d* 1, 35 *A.D.2d* 98 (App.Div.1970), (holding as a matter of statutory interpretation that failure of

non-signatory party to apply for stay of arbitration did not bind such party to the arbitration award).

Of course, proper notice must be afforded to the party to be charged. *Battle v. General Cellulose Co., supra.* The record here is inconclusive as to whether the Cardell corporations received such notice. I would limit the remand to that issue.

*For affirmance as modified*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—6.

*Concurring in part and dissenting in part*—Justice O'HERN —1.