Filed 6/11/24  Salesky v. CRMNEXT CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JOSEPH SALESKY,<br><br>Plaintiff and Respondent,<br>v.<br>CRMNEXT, INC.,<br>Defendant and Appellant. | A168111<br><br>(San Francisco City & County<br>Super. Ct. No. CPF23517998) |

This is an appeal from a judgment confirming an arbitration award in favor of Joseph Salesky.  After Salesky's employer, CRMNEXT, Inc. (CRMNEXT), learned of sexual harassment allegations against him, the parties negotiated the terms of Salesky's termination.  Several months later, Salesky demanded arbitration pursuant to the parties' employment agreement, alleging that CRMNEXT breached the termination agreement by failing to compensate him for, among other things, the sale of his shares in CRMNEXT's parent company, Acidaes Solutions Private Limited (Acidaes). The arbitrator found in favor of Salesky and issued an award requiring CRMNEXT to pay him nearly $2 million for his Acidaes shares.  The court affirmed the award.

CRMNEXT argues that in making the award, the arbitrator exceeded her authority because (1) she did not have subject matter jurisdiction over Salesky's stock-related claim; (2) she adjudicated the rights and interests of

third party Acidaes without its consent; (3) she provided a remedy inconsistent with the stock agreements governing the transfer and valuation of Acidaes shares; and (4) the award compels CRMNEXT to violate foreign law and the law of the state of its incorporation. We reject these contentions and affirm.

## I. BACKGROUND

CRMNEXT is a Delaware corporation. It is a wholly owned subsidiary of Acidaes, a company incorporated under the laws of India. Salesky was CRMNEXT's Chief Executive Officer. He signed an employment agreement with CRMNEXT that contained an arbitration provision.

The arbitration clause provides, in relevant part, that "any and all disputes, claims, or causes of action arising from or relating to . . . [Salesky's] employment, or the termination of [his] employment, including but not limited to statutory claims, shall be resolved" by binding arbitration. It further stated, "The arbitrator shall be authorized to award any or all remedies that [Salesky] or the Company would be entitled to seek in a court of law."

An appendix attached to the employment agreement provided that "[a] Stock Option Plan will be provided to grant 1% of the parent company in conjunction with this agreement."

### A. Acidaes's Stock Agreements

A few weeks after signing the employment agreement, Salesky received a "Letter of Grant/Offer" from Acidaes inviting him to participate in Acidaes's Stock Option Plan (the "Plan"). The letter stated that Salesky was being offered 207 stock options, which he could then convert into shares. The offer

was "subject to the terms and conditions of the Plan" and the stock option agreement.

The stock option agreement attached to the letter contained restrictions on the transfer of shares. It stated: "No optionee shall, directly or indirectly, sell, transfer, assign, dispose of, create any encumbrance over or otherwise transfer the legal or beneficial ownership or economic benefits . . . of all or any portion of the Shares issued consequent upon exercise of the Options to any person, or entity, except as provided in the Plan or the Agreement." It prohibited the optionee from selling the shares to a third party until the optionee had provided the "Promoters" 90 days to purchase the shares. The Promoters included Nishant Singh, a member of the board of directors of both CRMNEXT and Acidaes.

The Plan similarly prohibited the transfer or sale of shares to any person or entity except for the "Promoter." It also required the optionee, upon separation from the "Company," to sell the shares "to any Person nominated by the Promoters at the Buy Back Price of the Shares." The Plan defined "Company" as including Acidaes's subsidiaries. The "Buy Back Price" is determined by a specific formula outlined in the Plan.

The Plan and the stock option agreement stated they were governed by the laws of India. The stock option agreement also contained a "Dispute Resolution" provision for "[a]ny dispute arising from this Agreement." The agreement stated that "the parties to this Agreement submit themselves to exclusive jurisdiction of courts at New Delhi."

Salesky accepted the offer for 207 stock options and agreed to abide by the stock option agreement and the Plan. In signing the "Option Acceptance Letter," Salesky also specifically agreed not to sell or transfer any shares "without the prior written consent of the board of directors of [Acidaes]." He

3

thereafter exercised his options and purchased shares in Acidaes. CRMNEXT was not a party to the stock agreements.

### B. Salesky's Oral Termination Agreement with CRMNEXT

We take the following facts from the arbitrator's written arbitration award and treat them as correct. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367, fn. 1 (*Advanced Micro Devices*).)

In September 2021, CRMNEXT learned about allegations of sexual harassment against Salesky. After investigating the allegations, Singh and Nishant Rau met with Salesky to negotiate the terms of his resignation. Like Singh, Rau is a member of the board of directors of CRMNEXT and Acidaes.

After the meeting, Salesky sent a letter of resignation to Rau. In the letter, Salesky said that "[p]ursuant to our discussion, I will enter into a final Separation and Release Agreement with the Company." The agreement was to provide Salesky compensation for unpaid expenses and unused vacation time, six months of severance pay, and provisions for the "liquidation" of his stock. According to Salesky, the "liquidation schedule" would "occur in four increments over approximately one year."

Rau and Singh received the letter and did not refute Salesky's characterization of the parties' oral agreement regarding the terms of his resignation. Instead, the parties' attorneys continued to work on the language of the written separation agreement. However, before the agreement was finalized, CRMNEXT sent Salesky a letter of termination for cause.

### C. Arbitration Demand and Counterclaims

Shortly after receiving the letter of termination for cause, Salesky submitted a demand for arbitration to the Judicial Arbitration and Mediation Services (JAMS), alleging that CRMNEXT breached the oral termination

4

agreement because it did not pay him for his expenses, unused vacation time, and stock. He asserted causes of action against CRMNEXT for breach of contract, fraud in the inducement, violation of a severance agreement to which CRMNEXT had agreed as inducement to obtain Salesky's voluntary resignation, and defamation.

CRMNEXT asserted cross-claims against Salesky for breach of the employment agreement and implied contractual indemnity. CRMNEXT agreed that JAMS had jurisdiction over the dispute.

## D. Arbitration Award

The arbitration hearings took place in December 2022. A few months later, the arbitrator issued an interim award. The interim award does not appear in the record, but the record shows that CRMNEXT objected to the interim award on the ground that the arbitrator did not have jurisdiction to arbitrate Salesky's claim regarding his Acidaes shares. It argued that disputes related to the stock option agreement was subject to the jurisdiction of courts in India.

The arbitrator issued a final award in March 2023. She found that Salesky had proven his claims that CRMNEXT breached the oral termination agreement and violated the terms of the severance agreement. As a result, CRMNEXT owed Salesky severance damages and compensation for unreimbursed business expenses and for the sale of his Acidaes shares, which the parties had agreed would be valued at the "prior Series B valuation."

Regarding CRMNEXT's objection to the interim award, the arbitrator concluded she had jurisdiction to determine whether CRMNEXT agreed to purchase Salesky's Acidaes shares because Salesky was not asserting a violation of the stock option agreement.

Accordingly, the arbitrator ordered CRMNEXT to pay Salesky almost $2 million, comprised in part of four installments of $425,000 each "for the sale of Mr. Salesky's stock in Acidaes to Acidaes."

### E. Post Arbitration Proceedings

Salesky petitioned the trial court to confirm the arbitration award. CRMNEXT opposed the petition and requested correction or vacation of the award. It argued that the arbitrator exceeded her powers by requiring CRMNEXT to purchase Salesky's Acidaes shares based on an oral agreement that violated the stock agreements. CRMNEXT further contended the arbitrator rewrote the stock agreements, thereby violating public policy.

The trial court granted Salesky's petition and denied CRMNEXT's request for correction or vacation of the arbitration award. The court concluded that CRMNEXT failed to show the arbitrator exceeded her powers because Salesky did not seek relief under the stock agreements and the arbitrator did not rewrite those agreements; "she simply interpreted the terms of the parties' oral severance agreement."

A few weeks later, CRMNEXT filed an ex parte application to stay entry of judgment. It argued that, as a company incorporated under the laws of Delaware, the judgment exposed it to liability under Delaware General Corporation Law by compelling it to purchase shares in its parent company and pay Salesky approximately $1.7 million for the shares. CRMNEXT asserted it would be filing an action in Delaware to determine whether complying with the arbitration award would cause it to violate the relevant Delaware statutes, and it requested a stay of the entry of judgment for six months.

The trial court denied CRMNEXT's ex parte application and entered judgment in favor of Salesky.

6

## II. DISCUSSION

### A. *Legal Standards*

The California Supreme Court established the standard for judicial review of arbitration awards in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 (*Moncharsh*). The court emphasized that private arbitration is intended to be a " 'speedy and relatively inexpensive means of dispute resolution.' " (*Id.* at p. 9.) Where, as here, the parties have agreed that disputes would be submitted to binding arbitration, the court concluded, "an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Id.* at p. 6.) Thus, the merits of the controversy, the validity of the arbitrator's reasoning, and the sufficiency of the evidence are not subject to judicial review. (*Id.* at p. 11.) Instead, review is strictly limited to instances in which there is "a statutory ground to vacate or correct the award." (*Id.* at p. 28.)

Code of Civil Procedure section 1286.2 enumerates six statutory grounds for vacating an arbitration award. Of these, CRMNEXT relies on Code of Civil Procedure section 1286.2, subdivision (a)(4), which provides that an arbitration award shall be vacated if "[t]he arbitrators *exceeded their powers* and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4), italics added.)

Under Code of Civil Procedure section 1286.2, subdivision (a)(4), "An arbitrator exceeds his powers when he acts without subject matter jurisdiction [citation], decides an issue that was not submitted to arbitration [citations], arbitrarily remakes the contract [citation], upholds an illegal contract [citation], issues an award that violates a well-defined public policy

7

[citation], issues an award that violates a statutory right [citation], fashions a remedy that is not rationally related to the contract [citation], or selects a remedy not authorized by law [citations]. In other words, an arbitrator exceeds his powers when he acts in a manner not authorized by the contract or by law." (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 (*Jordan*).)

"In determining whether an arbitrator exceeded his powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his contractual authority." (*Jordan, supra,* 100 Cal.App.4th at pp. 443–444.) As we will explain, none of CRMNEXT's grounds for vacating the arbitration award falls within Code of Civil Procedure section 1286.2, subdivision (a)(4).

## B. Subject Matter Jurisdiction

CRMNEXT contends the arbitrator lacked subject matter jurisdiction over Salesky's stock-related claim because it involved shares that Salesky held in third party Acidaes. As previously mentioned, CRMNEXT and Salesky orally agreed that in exchange for Salesky's voluntary resignation, CRMNEXT would, among other things, purchase Salesky's Acidaes shares. The arbitrator concluded that Salesky had proven his claim that CRMNEXT breached the oral termination agreement by failing to pay him for the shares. She therefore ordered CRMNEXT to compensate Salesky for the value of the shares based on "the prior Series B valuation." We conclude the arbitrator had jurisdiction over Salesky's stock-related claim.

Because arbitration is a matter of contract (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683), what determines the arbitrator's general "subject matter" jurisdiction is the parties' *agreement* to submit their dispute to arbitration. (*Ajida*

8

*Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 543 [" 'The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate.' "].)

To determine the scope of an arbitration clause, " '[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made.' " (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744.) " ' " 'A heavy presumption weighs the scales in favor of arbitrability; an order directing arbitration should be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." ' " ' " (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 642.) In other words, " 'any doubts as to the meaning or extent of an arbitration agreement are for the arbitrators and not the court to resolve.' " (*Advanced Micro Devices, supra*, 9 Cal.4th at pp. 367, 372.)

The parties' arbitration agreement provides for arbitration of "any and all" disputes and claims "arising from or relating to . . . this Agreement, [Salesky's] employment, or the termination of [his] employment." Clauses like this one are construed broadly because they cover disputes not only arising out of the agreement but disputes "relating to" the agreement (and in this case, Salesky's employment and termination). (*Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1052.)

It is true that Salesky's breach of contract claim involves shares in third party Acidaes. However, his allegation that CRMNEXT breached an oral agreement to purchase the shares in exchange for Salesky's voluntary resignation "relat[es] to" the termination of Salesky's employment. The usual and ordinary meaning of "termination" in the employment context includes

an employee's voluntary resignation. (See Black's Law Dict. (11th ed. 2019) p. 1774, col. 1 [defining "termination of employment" as "[t]he complete severance of an employer-employee relationship"].) Nothing in the employment agreement indicates an intent to carve out stock-related claims from the arbitration provision. Given the causal connection between the oral termination agreement and Salesky's resignation, the dispute clearly falls within the plain language of the arbitration provision. (See *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 383 [discussing ordinary meaning of "relate[d] to"].)

Despite the broad arbitration provision, CRMNEXT argues that it does not encompass Salesky's stock-related claim because the stock agreements expressly state that they are not to form a part of any contract between CRMNEXT and Salesky. CRMNEXT contends the claim is instead governed by the stock option agreement's dispute resolution provision. But CRMNEXT is not a party to the stock agreements, and the employment agreement does not incorporate by reference the terms of those agreements.[1] CRMNEXT

---

[1] Although the employment agreement states that "[a] Stock Option Plan *will be* provided to grant 1% of the parent company in conjunction" with the agreement, this language does not establish that the terms of the Plan are applicable to CRMNEXT. (Italics added.) That the Plan was to be provided to Salesky at some future point in time serves more to separate the two agreements rather than to incorporate one into the other, a point CRMNEXT appears to concede in its opening brief. (See *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1331 [to incorporate another agreement by reference, the terms of the document being incorporated must be " ' "known or easily available" ' " to the contracting parties].) The employment agreement's integration clause has the same effect. "The purpose of an integration clause is to preclude the introduction of evidence which varies or contradicts the terms of the written instruments." (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1609, citing Code Civ. Proc., § 1856, subd. (a).)

therefore did not agree to adjudicate its rights and obligations according to the stock agreements.  (See *Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 788 [" 'An essential element of any contract is the consent of the parties.' "].)  And because arbitration is a "creature of consent" between the parties to the arbitration agreement (*VVA-TWO, LLC v. Impact Development Group, LLC* (2020) 48 Cal.App.5th 985, 1000), it necessarily follows from these circumstances that the stock agreements do not limit the scope of the arbitration provision set forth in the separate employment agreement. Having agreed to arbitrate "any" dispute "relating to" Salesky's termination, CRMNEXT cannot now claim that the arbitration provision does not cover Salesky's stock-related claim.

Moreover, the plain language of the dispute resolution provision belies CRMNEXT's argument that it governs Salesky's claim.  The provision applies to "[a]ny dispute arising from this Agreement."  "Agreement" is defined as the "Stock Option Agreement."  Clauses providing for resolution of disputes "arising from" an agreement "have generally been interpreted to apply only to disputes regarding the interpretation and performance of the agreement." (*Ramos v. Superior Court, supra*, 28 Cal.App.5th at p. 1052.)  In this case, Salesky's claims do not concern the interpretation or performance of the stock option agreement; they concern only the oral termination agreement between him and CRMNEXT.

Apparently acknowledging these points, CRMNEXT attempts to frame the dispute as one adjudicating Acidaes's rights and obligations under the stock agreements without its consent.  On this basis, it contends that Acidaes was a "necessary" party, implicitly suggesting that the failure to join Acidaes as a party to the arbitration proceeding is fatal to the arbitrator's jurisdiction over the stock-related dispute.  Even assuming Acidaes is a necessary party,

11

however, "the absence of an indispensable [or necessary] party does not deprive the arbitrator of power to render a decision as to parties before it or the court the power to enforce the decision. . . . 'It is for reasons of equity and convenience, and not because it is without the power to proceed, that the court should not proceed with a case where it determines that an "indispensable party" is absent and cannot be joined.' "[2] (*Carpenters 46 Northern Cal. Counties Conf. Bd. v. Zweigle* (1982) 130 Cal.App.3d 337, 344 (*Zweigle*).)

The cases CRMNEXT relies on—*Unimart v. Superior Court of Los Angeles County* (1969) 1 Cal.App.3d 1039 (*Unimart*) and *Retail Clerks Union Local 770, AFL-CIO v. Thriftimart, Inc.* (1963) 59 Cal.2d 421 (*Thriftimart*)— do not support its position. In *Thriftimart*, a union and Thriftimart agreed, pursuant to their arbitration contract, to arbitrate the union's claim that a collective bargaining agreement between it and Thriftimart covered employees of a subsidiary of Thriftimart, MORE. (*Thriftimart*, at pp. 422– 423.) The arbitrator's award provided that the collective bargaining agreement covered MORE and its employees, and the trial court entered judgment confirming the award. (*Id.* at pp. 422, 425.) The California Supreme Court reversed the judgment, reasoning "that enforcement of the

---

[2] Under the rules of joinder, a "necessary" party is distinct from an "indispensable" party. A "necessary" party is a party that is " ' "materially interested in the subject of an action" ' " and should be joined. (*Bianka M. v. Superior Court (Gladys M.)* (2018) 5 Cal.5th 1004, 1018–1019.) But where a necessary party cannot be joined, "the trial court must determine whether the action should be dismissed without prejudice because the necessary party is indispensable." (*Dreamweaver Andalusians, LLC v. Prudential Ins. Co. of America* (2015) 234 Cal.App.4th 1168, 1176.) Regardless of whether Acidaes may properly be characterized as a necessary or indispensable party, the failure to join it was not fatal to the arbitrator's jurisdiction over Salesky's stock-related claim.

award against Thriftimart would be enforcement against MORE." (*Id.* at pp. 425–427.) Because MORE did not agree to submit the issue of arbitrability to the arbitrator, the court concluded that it was not bound by the submission. (*Id.* at p. 427.)

Relying on *Thriftimart*, the court in *Unimart* held that "an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement or arbitration proceedings." (*Unimart, supra,* 1 Cal.App.3d at p. 1045.) There, the trial court ordered Unimart to arbitrate with the union the question of whether a store operated by a company called Two Guys was one of the stores covered by the bargaining agreement between Unimart and the union. (*Id.* at pp. 1041–1042.) The appellate court concluded the trial court erred in compelling arbitration because whether Two Guys was bound by the arbitration provision "necessarily involves inquiry into the relationship between Unimart and Two Guys and its employees," and such matters of " 'substantive arbitrability' " are to be decided by the court, not the arbitrator. (*Id.* at pp. 1042, 1045.)

In both *Thriftimart* and *Unimart*, the court faced the question of whether an arbitration provision was operative against a nonsignatory based on the nonsignatory's relationship with a signatory. But "[t]he fact that the arbitrator's decision might have an *indirect* effect upon others does not deprive the arbitrator of authority to provide relief for a party to the arbitration." (*San Jose Federation etc. Teachers v. Superior Court* (1982) 132 Cal.App.3d 861, 868, italics added.) In *San Jose Federation*, for example, a teacher submitted to arbitration claims that the school district violated a collective bargaining agreement when it assigned another teacher to teach her course. (*Id.* at pp. 863–864.) The arbitrator's award required the district to give the first teacher priority to teach the course. (*Id.* at p. 864.) The

13

district successfully petitioned the trial court to vacate the award. (*Ibid.*) On appeal by the union, the district argued the arbitrator exceeded his powers in part because the award affected the rights of a third party, the teacher currently teaching the course. (*Id.* at p. 867.) The First District disagreed. (*Ibid.*) It distinguished the case before it from *Unimart*, reasoning that in the latter, "the subject of the arbitration was the rights and obligations of the absent third party." (*Ibid.*) Because the subject of the arbitration was the first teacher's entitlement to teach the class, "[t]he effect upon [the other teacher] [was] an indirect effect," and the arbitrator therefore had authority to provide relief to the first teacher. (*Id.* at pp. 867–868.)

Here, the subject of the arbitration was Salesky's entitlement to compensation from CRMNEXT for unpaid benefits and the value of his stock in Acidaes. Contrary to CRMNEXT's assertion, the arbitrator did not adjudicate Acidaes's rights or obligations under the stock agreements. The final award requires only that CRMNEXT pay Salesky nearly $2 million based on its breach of the oral termination agreement. To the extent Salesky breached the stock agreements, there is nothing in the record indicating Acidaes cannot seek relief for those breaches. Therefore, as in *San Jose Federation*, any effect upon Acidaes is, at most, an indirect effect.[3]

---

[3] For the same reasons, we reject CRMNEXT's argument that the arbitrator exceeded her powers "by adjudicat[ing] the rights and interests of Acidaes," an argument it sets forth under a separate heading in its opening brief. CRMNEXT again relies on *Thriftimart* and *Unimart*, as well as *Retail Clerks Union, Local 428, AFL-CIO v. L. Bloom Sons Company Inc.* (1959) 173 Cal.App.2d 701 (*Retail Clerks Union*) and *Zweigle, supra*, 130 Cal.App.3d 337. The latter two cases do not compel a different conclusion. *Retail Clerks Union* is like *Unimart* in that the union in that case sought to arbitrate the question of whether the collective bargaining agreement applied to a store purportedly operated by a nonsignatory. (*Retail Clerks Union*, at pp. 702–703.) Similarly, the *Zweigle* court held that a nonsignatory corporation was

In sum, applying the strong policy in favor of arbitration, and resolving any doubts in favor of arbitrability, we agree with the trial court that Salesky's stock-related claim is subject to arbitration.

## C. Unauthorized Remedy

CRMNEXT next argues that even if the arbitrator had jurisdiction over Salesky's stock-related claim, she exceeded her powers by providing a remedy not permitted by the stock agreements. Again, we disagree that the arbitrator exceeded her powers.

" 'Absent an express and unambiguous limitation in the [arbitration] contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation.' " (*San Francisco Housing Authority v. Service Employees Internat. Union, Local 790* (2010) 182 Cal.App.4th 933, 943.) " '[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his [or her] authority, that a court is convinced he [or she] committed serious error does not suffice to overturn his [or her] decision.' " (*Advanced Micro Devices, supra*, 9 Cal.4th at p. 378.)

The award in this case meets this standard. The claims submitted by Salesky were based on CRMNEXT's alleged breach of the oral termination agreement. The arbitrator found that the agreement provided for "liquidation" of Salesky's shares in Acidaes based on the prior Series B valuation. Accordingly, the award ordered CRMNEXT to compensate Salesky for its breach of the oral termination agreement in an amount

---

not bound to the arbitration agreement as an alter ego of the signatory where the corporation was not a party to the arbitration proceeding at which the issue was decided. (*Zweigle*, at p. 343.)

determined by the prior Series B valuation. The arbitration agreement did not prohibit the arbitrator from awarding money damages. Therefore, the award bears a rational relationship to the claims and the arbitration agreement.

CRMNEXT nonetheless contends the arbitration award exceeded the arbitrator's powers because it violated the "Option Acceptance Letter," which prohibited the transfer of shares without the prior written consent of the Acidaes board of directors. Under this provision, "any action" taken by Salesky in breach thereof "shall be void ab initio," yet, as CRMNEXT points out, the arbitrator found that the agreement to purchase Salesky's shares was valid even absent the consent of Acidaes's board of directors. CRMNEXT further argues the award violates the Plan because it is based on the prior Series B valuation instead of the Plan's "Buy Back" formula. Citing *Jordan, supra*, 100 Cal.App.4th 431, CRMNEXT relies on the principle that an arbitrator exceeds her powers "when [she] acts in a manner not authorized by the contract or by law." (*Id.* at p. 443.) We disagree with these contentions for two reasons.

First, as previously discussed, the stock agreements are separate from and involve different parties than the employment agreement. CRMNEXT cites no authority for the proposition that an arbitrator's powers may be limited by agreements other than the arbitration agreement absent an "express and unambiguous" limitation in the arbitration agreement itself. (See *San Francisco Housing Authority v. Service Employees Internat. Union, Local 790, supra*, 182 Cal.App.4th at p. 943.) Such a holding would make little sense since, as we have already explained, "arbitration is a creature of consent" by the parties to the arbitration agreement. (*VVA-TWO, LLC v. Impact Development Group, LLC, supra*, 48 Cal.App.5th at p. 1000.)

16

The cases relied on by CRMNEXT do not suggest otherwise. In *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, the arbitrator declared a forfeiture of the withdrawing partners' capital accounts, even though the partnership agreement containing the arbitration provision did not provide for forfeiture, and the arbitration provision expressly precluded the arbitrator from granting a remedy " 'not available in a court of law.' " (*Id.* at pp. 1057, 1061.) The Second District concluded the arbitrator exceeded his powers by declaring forfeiture because it was "contrary to partnership law, the partnership agreement and decisional law." (*Id.* at pp. 1056–1059.)

In *Bonshire v. Thompson* (1997) 52 Cal.App.4th 803, the contract containing the arbitration clause had an integration clause prohibiting the use of extrinsic evidence in interpreting the agreement. (*Id.* at p. 806.) Because the arbitrator used extrinsic evidence in contravention of the integration clause, the Court of Appeal affirmed the judgment vacating the arbitration award, reasoning that the parties contractually agreed to limit the powers of the arbitrator by prohibiting consideration of extrinsic evidence. (*Id.* at pp. 810–811.)

And in *California Union Square L.P. v. Saks & Company LLC* (2020) 50 Cal.App.5th 340, Division 3 of this court concluded the arbitrator exceeded his powers by visiting the tenant's New York store because neither party mentioned the store during the arbitration hearing, and the arbitration agreement limited the arbitrator's authority to reviewing facts and evidence that the parties had an opportunity to rebut or cross-examine. (*Id.* at pp. 349–352.)

These cases are consistent with the rule that the arbitrator's powers are derived from and limited by the parties' agreement to arbitrate. (*Advanced Micro Devices, supra*, 9 Cal.4th at p. 375.)

The other case cited by CRMNEXT—*Jordan, supra*, 100 Cal.App.4th 431—reflects a narrow public policy exception to this rule: "Arbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.) In *Jordan*, an award of $88 million issued in a statutorily authorized arbitration violated a statute limiting arbitration awards to $18 million. (*Jordan*, at pp. 438, 444, 450–451.) The Third District thus concluded that the award contravened "a clear expression of public policy." (*Id.* at p. 452.) Absent a showing of exceptional circumstances, however, "[c]ourts are [] reluctant to invalidate an arbitration award because 'the Legislature has already expressed its strong support for private arbitration and the finality of arbitral awards in title 9 of the Code of Civil Procedure.' " (*Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242, 1252, disapproved of on another ground by *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 117.) We do not decide whether the public policy exception applies to the arbitration award's purported violation of the stock agreements because CRMNEXT has not identified an unwaivable statutory right or explicit legislative expression of public policy implicated by the violation.

Second, to the extent CRMNEXT is contending the oral termination agreement is invalid, this claim amounts to an improper assertion that the arbitrator incorrectly resolved contested issues of law and fact. The arbitrator's "resolution of those issues is what the parties bargained for in the arbitration agreement" and is therefore not reviewable by a court. (*SingerLewak LLP v. Gantman* (2015) 241 Cal.App.4th 610, 625.) We therefore will not review a claim that the arbitrator erroneously concluded the oral termination agreement—including the agreement to liquidate

18

Salesky's Acidaes shares—was valid and enforceable. (See *Moncharsh, supra*, 3 Cal.4th at p. 28 ["It is well settled that 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' "].)

In sum, there is no basis to conclude the award was not authorized by the parties' arbitration agreement or the remedy not rationally related to the agreement and Salesky's claims.

### D. Illegality of the Oral Termination Agreement

Invoking the public policy exception discussed in *Jordan, supra*, 100 Cal.App.4th at pages 438, 450–453, CRMNEXT argues the arbitrator exceeded her powers by issuing an award that enforces an illegal contract. According to CRMNEXT, the part of the oral termination agreement requiring it to purchase Salesky's Acidaes shares violates Indian and Delaware law, and thus the arbitration award must be vacated. We conclude this contention lacks merit.

As an initial matter, we observe from the record that it appears CRMNEXT did not raise the issue of illegality during the arbitration proceedings or in its motion to vacate or correct the arbitration award. Thus, we may conclude that CRMNEXT has forfeited the issue. (*Moncharsh, supra*, 3 Cal.4th at p. 30; *Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 959.) Nevertheless, since Salesky does not urge us to find the issue forfeited, we address the merits of CRMNEXT's claim of illegality.

Our high court in *Moncharsh* discussed situations where, as here, a party seeks judicial review of an arbitration award and claims that a contractual provision other than the arbitration clause is illegal. (*Moncharsh, supra*, 3 Cal.4th at pp. 29–30.) The court rejected the notion that "judicial review of an arbitrator's decision is routinely available where

19

one party claims merely that a portion of a contract is illegal." (*Id.* at p. 32, fn. 14.)

The Supreme Court noted, however, that "there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision when a party claims illegality affects only a portion of the underlying contract.  Such cases would include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights." (*Moncharsh, supra*, 3 Cal.4th at p. 32.)  "Without an explicit legislative expression of public policy, however, courts should be reluctant to invalidate an arbitrator's award on this ground.  The reason is clear:  the Legislature has already expressed its strong support for private arbitration and the finality of arbitral awards in title 9 of the Code of Civil Procedure.  [Citation.]  Absent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." (*Ibid.*)

"Numerous courts have since construed *Moncharsh* to stand for the proposition that an arbitrator exceeds its power within the meaning of Code of Civil Procedure section 1286.2 by issuing an award that violates a party's statutory rights or 'an explicit legislative expression of public policy.' " (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 37.)  Courts have found limited and exceptional circumstances exist where the arbitration award itself was illegal.  (See, e.g., *Jordan, supra*, 100 Cal.App.4th at pp. 450–453; *Black v. Cutter Laboratories* (1955) 43 Cal.2d 788, 800; *Evans Products Co. v. Millmen's Union No. 550* (1984) 159 Cal.App.3d 815, 819–820 (*Evans Products Co.*).)  In other words, we are "not bound to defer to *an award that*

20

*actually violates the law* or any explicit and well defined and dominant public policy." (*Evans Products Co.*, at p. 819, italics added.)

The public policy exception stems from the "general principle of contract law that courts will not enforce contracts requiring the performance of an illegal act." (*Evans Products Co., supra*, 159 Cal.App.3d at p. 819; accord, *Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576, 610–611, overruled on another ground in *Advanced Micro Devices, supra*, 9 Cal.4th at p. 367.)

### 1. *Indian Law*

CRMNEXT's argument rests in part on section 19 of India's Companies Act (the "Act"), which prohibits companies from "hold[ing] any shares in its holding company" or transferring its shares to its subsidiaries.[4] Under the Act, "any such allotment or transfer of shares of a company to its subsidiary company shall be void." CRMNEXT contends that because it is a subsidiary of Acidaes, the arbitration award compels it to violate this law by directing it to purchase Salesky's shares in Acidaes. In response, Salesky argues the award does not require CRMNEXT to purchase Acidaes shares. It further argues that because CRMNEXT is incorporated under the laws of Delaware, it is subject to United States or Delaware law, the latter of which allows a subsidiary to own shares in its parent company. (See Del. Code, tit. 8, § 123.)

We agree with Salesky that the arbitration award itself does not violate the Act, because it does not require CRMNEXT to purchase or hold Acidaes

---

[4] CRMNEXT requests judicial notice of the Act, the Indian Arbitration and Conciliation Act, and two decisions from Indian courts. It contends that judicial notice is proper pursuant to Evidence Code section 452, subdivisions (f) and (h). Salesky filed no opposition to the motion. We treat Salesky's silence as consent and grant the motion. (Cal. Rules of Court, rule 8.54(c).)

shares. And CRMNEXT has not addressed whether an award ordering it to compensate Salesky based on the value of his Acidaes shares violates the public policy embodied by section 19 of the Act. (*City of Richmond v. Service Employees Internat. Union, Local 1021* (2010) 189 Cal.App.4th 663, 671 [the "relevant question" is "whether according finality to the arbitrator's decision would be incompatible with that public policy"].) Thus, this does not appear to be a situation that would undermine the strong presumption in favor of the finality of arbitration awards. We need not belabor the point, however, because Salesky's second contention raises a choice-of-law question that is dispositive.

" ' "[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state" ' " and shows it is the appropriate rule for the forum to apply to the case before it. (*Washington Mutual Bank, FA v. Superior Court* (2001) 24 Cal.4th 906, 919; see also *Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 581.) Where, as here, a party is claiming that a contract calls for an illegal act, "the legality or illegality of performance under a contract is usually determined by the local law of the state where this performance either has taken, or is to take, place." (Rest.2d Conf. of Laws, § 202, com. c.) Ultimately, the appropriate law must be determined based on the relative interests of the parties and the involved jurisdictions. (*Buskuhl v. Family Life Ins. Co.* (1969) 271 Cal.App.2d 514, 521.)

Although invoking the law of India, CRMNEXT presents no analysis of the choice-of-law issue.[5] Citing *Wong v. Tenneco, Inc.* (1985) 39 Cal.3d 126 at

---

[5] We note that neither party fully briefed the choice-of-law issue. CRMNEXT had the burden to brief this issue but failed to do so. Salesky raises it, but he does not explain how a court is to determine the applicable

page 135, it summarily claims that " 'a contract . . . made with a view of violating the laws of another country, though not otherwise obnoxious to the law . . . of the forum . . . will not be enforced.' " CRMNEXT's reliance on *Wong* is misplaced. There, the plaintiff was a California resident who knowingly created a farming operation in Mexico that was illegal under Mexican law. (*Id.* at pp. 128–133.) He brought a breach of contract action against several parties that had participated in the illegal operation. (*Id.* at pp. 132–133.) The Supreme Court held the contract was unenforceable, citing comity principles, under which "the forum state will generally apply the substantive law of a foreign sovereign to causes of action which arise there." (*Id.* at pp. 134, 137–138.) Because "purposeful violation of Mexican law [was] clear" and the land at issue was in Mexico, the court found that the facts of the case required application of Mexican law. (*Id.* at pp. 135–136.) No similar facts exist here, and CRMNEXT makes no other attempt to show that Indian law provides the appropriate rule of decision here.

Under these circumstances, we conclude that Indian law is not the law applicable to the issue of illegality in this case. The proponent of a foreign law has the burden of showing it applies under California's choice-of-law rules. (*Hurtado v. Superior Court, supra*, 11 Cal.3d at p. 581; *Pep Boys Manny Moe & Jack of California v. Old Republic Insurance Company* (2023) 98 Cal.App.5th 329, 348–349.) CRMNEXT failed to carry that burden. Thus, section 19 of the Act is not a basis for vacating the arbitration award.

### 2. *Delaware Law*

CRMNEXT also contends that its purchase of Acidaes shares was "likely" an unlawful stock purchase or dividend under Delaware General

---

law. CRMNEXT therefore had the opportunity to brief the issue. (See *Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1517–1518.)

Corporation Law (DGCL). Specifically, it cites DGCL section 160, subdivision (a), which prohibits a corporation from purchasing "its own shares of capital stock . . . when the capital of the corporation is impaired or when such purchase or redemption would cause any impairment of the capital of the corporation." It also relies on DGCL sections 170 and 173, which limit corporations to paying stock dividends out of their surplus or net profits. (Del. Code, tit. 8, §§ 170, subd. (a), 173.) CRMNEXT cites Delaware authority it contends stands for the proposition that these statutes apply to a subsidiary purchasing shares in its parent company.

Even assuming Delaware law applies here, this contention lacks merit. CRMNEXT's argument rests on factual predicates—including the impairment of capital and the existence of a surplus or net profits—not conclusively established in the record. Based on the record before us, no such facts were presented in the arbitration proceedings or in CRMNEXT's motion to vacate the arbitration award. To demonstrate its contention that the trial court erred in confirming the award on public policy grounds, CRMNEXT cites its counsel's declaration supporting its ex parte application to stay entry of judgment. However, the application was filed after the challenged ruling and therefore was not considered for the point now urged. "Elemental to appellate practice and procedure is that a reviewing court will ordinarily not consider on appeal matters that were not presented to the trial court when it made the challenged ruling." (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1306–1307.) As such, we cannot conclude that enforcing the arbitration agreement would violate Delaware law.

In conclusion, for all the reasons discussed in this opinion, the arbitrator did not exceed her powers. The trial court therefore correctly confirmed the arbitration award.

24

### III.   DISPOSITION

The judgment is affirmed.  Salesky shall recover his costs on appeal.
(Cal. Rules of Court, rule 8.278(a)(2).)

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A168111
*Salesky v. CRMNEXT, Inc.*