William B. Lawless, J.
The question for decision is whether a labor agreement executed between the International Association of Machinists AFL-CIO Tool and Die Makers Lodge 586, and Pivot Punch & Die Corp., a dissolved corporation, is binding on the Pivot Punch Corporation, one of two companies organized to terminate a litigation between the two original stockholders of the Pivot Punch & Die Corporation. For convenience, we shall hereafter refer to the Pivot Punch & Die Corporation as the “ Dissolved Corporation ”, the Pivot Punch Corporation as the “King Corporation”, and Pivot Tool and Die Corporation as the “ Ivopczynski Corporation.”
This matter is before this court by order of the Honorable Joseph A. Nevins granted September 5, 1961, and that order required the Dissolved Corporation to arbitrate certain disagreements under a collective bargaining agreement, and further ordered that the issues of fact as to the making of the *646 contract to arbitrate be tried at this Trial Term of the Supreme Court. Thereafter, the parties stipulated to submit the matter on an “ Agreed Statement of Facts,” with one exception.
Originally, all of the stock in the Dissolved Corporation was held equally by Robert H. King and John F. Kopczynski. On or about July 14, 1958, a proceeding was commenced by John F. Kopczynski for a dissolution of that company. A hearing on the dissolution came before a Special Term of this court on or about December 12, 1960 and the matter was referred to a Trial Term on January 3, 1961. On January 9, 1961, the parties consented in open court that the corporation be dissolved in accordance with an agreement executed that day. Finally, on October 11, 1961, this court granted an order of dissolution. Prior to the dissolution of the Dissolved Corporation, the union was notified of the proceeding, but the unión chose not to intervene or present claim of any kind pursuant to the direction of its membership. From the commencement of the dissolution proceedings on or about July 25, 1958, to the date of the final order of dissolution, October 11,1961, the union did not intervene and did not present claim in the proceedings.
It is an agreed fact that the dissolution of the Dissolved Corporation was the culmination of long standing disputes between Messrs. King and Kopczynski and “ in no manner whatsoever was prompted by animosity toward the Union.” In essence, the dissolution agreement provided that both shareholders would transfer all their shares to the dissolved corporation and it in turn was to form two new corporations, one to be named “Pivot Punch Corporation” (the King Corporation) and the other to be named “ Pivot Tool and Die Corporation ” (the Kopczynski Corporation).
The King Corporation was to receive all punch raw materials, all stock punch inventory and all punch machinery and equipment. The Kopczynski Corporation was to receive all general tool and die raw materials and machinery. Neither corporation agreed in any Avay Avith the Dissolved Corporation or the union to assume the obligations of the collective bargaining agreement of March 21,1960.
On or about January 17, 1961, the King Corporation and the Kopczynski Corporation were formed under the laws of the State of New York. Each Avas controlled by King and Kopczynski respectively.- On February 3, 1961, the Dissolved Corporation ceased all production activities and terminated the employment of its remaining employees. On February 9, 1961, the Dissolved Corporation ceased all activities.
*647 During the period from January. 9 to February 9, 1961, approximately 8 employees of the Dissolved Corporation were hired by- the King Corporation, and the average -employment by the King Corporation for the-year 1961 was 14 employees, of which 9 were former employees of the Dissolved Corporation and were members of the union, contrasted with an average of approximately 60 employees maintained in the Punch Division operations of the Dissolved Corporation between the years 1955 and 1960.
On or about January 9, 1961, the union received notification from the Dissolved Corporation that on February 9, 1961, all employees of the Dissolved Corporation would be laid off. Approximately 10 days thereafter, the union submitted a complaint on a grievance form to the 11 Dissolved Corporation” which alleged violation of the labor contract in force with the Dissolved Corporation. The Dissolved Corporation refused to answer said grievance and refused to protest same under the terms of the labor agreement. Thereafter, and on January 11, 1961, a letter was sent to the Dissolved Corporation in behalf of the union and to Messrs. King and Kopczynski personally, putting them on notice that the union intended to hold the new corporations responsible to perform the terms of the labor agreement executed with the Dissolved Corporation.
On February 3, 1961, the King Corporation submitted a written proposal to the union, offering to recognize the union as the exclusive bargaining agent if the union represented a majority of the King Corporation’s employees, and if an agreement could be reached on an initial contract containing the matters stated in the proposal. This was rejected by the union on the ground that the proposal failed to provide for the adoption of the labor agreement executed with the Dissolved Corporation.
ISSUES
The issues before this court are whether the King Corporation is bound by the labor agreement and whether it should be required to arbitrate the grievances previously stated.
CONTENTIONS
The union contends that the Dissolved Corporation and the King Corporation are the same, either by virtue of the latter being one of the successors of the former, or by virtue of the latter being part of the operations of the former, and accordingly, contend that the labor agreement referred to constitutes the agreement of both the Dissolved Corporation and the King Corporation.
*648 The King Corporation contends (a) that no agreement to arbitrate exists between it and the union; (b) that the King CorporatiorL is not bound by the terms of the said labor agreement ; (e) that any issue as to whether the King Corporation is bound by the labor agreement is not an arbitratable issue; (d) that the final order of dissolution restrains the union from proceeding further in this proceeding and acts as a bar to the union’s requested arbitration; and (e) that even if the King Corporation were bound by the terms of the labor agreement, the union has failed to comply with certain terms and conditions precedent to the arbitration proceeding.
BELIEF SOUGHT
The union prays for a judgment denying the motion of the King Corporation to stay the arbitration sought herein and the union seeks an order directing that an arbitration proceed according to the labor agreement entered into between the union and the King Corporation and also that an order be entered that the labor agreement is a binding agreement on the King Corporation.
The King Corporation seeks an order permanently staying the arbitration proceeding sought by the union against the King-Corporation and permanently staying the arbitration proceeding sought by the union against the Dissolved Corporation as it relates to the King Corporation.
TESTIMONY BEFOBE THIS COUET
On May 25, 1962, testimony was taken before this court concerning- paragraph Eighth of the Agreed Statement of Facts, and particularly with respect to the phrase ‘ ‘ and in no manner Avhatsoever prompted by any animosity toward the union. ’ ’ The respondent proposed to revise the Agreed Statement of Facts to read: “ The dissolution of the Dissolved Corporation, therefore, was prompted by longstanding disputes betAveen Messrs. King and Kopczynski, unsuccessful actions and proceedings instituted by Mr. Kopczynski, and in no manner whatsoever prompted by any animosity toAvard or dispute or disagreement iuitli the Union.” (Emphasis supplied.) Petitioner would not consent to this revision.
On this point, the court took testimony of one John C. Mullen, a business representative of the International Association of Machinists, and the testimony of Robert H. King, the sole stockholder of the King Corporation. From the testimony adduced, this court finds that labor disputes arose during the life of the Dissolved Corporation, but there is no convincing evidence to *649 indicate that dissolution was prompted by the company’s dispute or disagreement with the union. The court believes that the Dissolved Corporation was dissolved because of the personal animosities between Messrs. King and Kopczynski. Therefore, respondents’ request to add the additional phrase to paragraph Eight is granted.
I.
Under New York law, the King Corporation is not bound by the terms of the labor agreement between the Dissolved Corporation and the union. In Matter of Teschner (285 App. Div. 435 [1st Dept., 1955]) an employer moved to stay arbitration pursuant to a demand therefor from the union. Special Term denied the stay and the employer appealed. The Appellate Division, in an opinion by Justice Botbikt, held that under the collective bargaining contract giving the employer an absolute right to go out of business, and providing for arbitration of controversies arising between the employer and the union, the issue of whether or not the employer had in fact gone out of business bore directly on the union’s demand for arbitration, and presented a question exclusively within the jurisdiction of the arbitrators. The Appellate Division affirmed Special Term as a consequence. However, in the Teschner case, the court distinguished its ruling from Matter of Kosoff (276 App. Div. 621) for the reason that in the Kosoff case, the petitioner employer was a corporation which had been legally dissolved. The court reasoned that whether in fact it had been dissolved in good or bad faith, it no longer survived to be accountable in arbitration proceedings under the contract. In Matter of Lehman v. Ostrovsky (264 N. Y. 130) the Court of Appeals held that no one is under a duty to arbitrate unless he has agreed to do so by clear language. (See, also, Matter of Writers Guild of America East, 1 N Y 2d 305; Matter of Eagar Constr. Corp. v. Ward Foundation Corp., 255 App. Div. 291; Matter of Spectrum Fabrics Corp., 285 App. Div. 710, affd. 309 N. Y. 709.) The court cannot impose such an agreement upon the parties. (Matter of Kallus, 292 N. Y. 459.)
In spite of the above decisions, it is true that the Nbav York courts have not dealt extensively with the question of successor-ship or alter ego as it relates to labor agreements. In contrast, Ihe Federal courts and the National Labor Relations Board have' considered the question frequently and have developed a body of law concerning it. Since the King Corporation is engaged in interstate commerce, it is subject to the National Labor Relations'Act and we therefore consider the decisions of both the Federal courts and the National Labor Relations Board. (See *650 Textile Workers v. Lincoln Mills, 353 U. S. 448 [1957].) In resolving the issue of “ successorship ”, the National Labor Relations Board considers the interest of all the parties and the circumstances surrounding each case. (See Miller Lbr. Co., 90 NLRB No. 185, 26 LRRM 1329 [1950].) It evalúes whether there was a change of ownership, whether the new company-assumed the existing agreement, the reasons for the sale, the products and size of the successor company, the size of the work force, and other pertinent facts.
II.
Applying these criteria, we find that the King Corporation is not in fact the alter ego or the successor of the Dissolved Corporation. We believe that the very purpose of the dissolution and settlement executed between Messrs. King and Kopezynski was to conclude the obligations and affairs of the old company and to salvage for each stockholder some of the functions of the Dissolved Corporation. While the work of the King Corporation is similar to that of a division of the Dissolved Corporation, its employment force, both in number and in union membership, is not the same or nearly the same as the Dissolved Corporation. The plant location is different, the gross sales vary, and the personnel is substantially reduced. We believe that a collective bargaining agreement envisioning the rights of 125 employees has little application to a company employing approximately 14 men.
In summary, we find that the Dissolved Corporation is no longer in existence and available to arbitrate. We find that the King Corporation is not the successor to the Dissolved Corporation and we find further as a matter of law that the order of dissolution specifically prevents the union from enforcing the provisions of the labor agreement even if the King Corporation were in fact the successor to the Dissolved Corporation.