Gerald J. Glasser et al., Appellants, *v.* Melvin L. Price et al., Respondents.

Second Department, July 27, 1970.

*Harry Friedson* for appellants.

*Charles J. Rappaport* for respondents.

Hopkins, J. In November, 1968 the petitioners, Glasser and Why Not Travel, Inc., and the individual respondents, Price, Kligler and Tobin, entered into an agreement under which the individual respondents sold their capital stock in Why Not Travel, Inc. to Glasser. The agreement in part reads as follows:

" whereas, the corporation [Why Not Travel, Inc.] does now rent premises located at 253-05 Union Turnpike, Floral Park, New York and the corporation does express a concern as to the length of its present lease and the rental for said premises and the other expenses of operating the physical location of the corporation business facility; in this matter it is agreed that the corporation will continue to pay its proportionate share of all rental and other operational expenses for so long as the corporation shall maintain its office at the above location; and

" whereas, any and all disputes that may arise out of or under this agreement shall be determined by binding arbitration before the American Arbitration Association " [bracketed matter supplied].

The respondent Premier Estate Planners, Inc. in August, 1969 served a notice on Why Not Travel, Inc. terminating the latter's tenancy as of September 30, 1969. On September 11, 1969 the petitioners served a demand for arbitration on the respondents, claiming that Why Not Travel, Inc. was entitled to the possession of the premises occupied by it, that Premier was nothing more than the alter ego of Price, Kligler and Tobin and that the respondents (Price, Kligler, Tobin and Premier) should pay damages in the event that Why Not Travel, Inc. was compelled to surrender the premises. The demand concluded: " PLEASE TAKE FURTHER NOTICE that unless each party served herewith applies to stay the arbitration within ten days after the service hereof upon such party, such party shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of limitation of time."

None of the respondents moved to stay the arbitration within 10 days after the service of the demand. The petitioners then brought this proceeding to compel arbitration. The Special Term granted the petition in part, directing that Price, Kligler and Tobin proceed to arbitration, but determining that Premier could not be compelled to arbitrate, since it was not a signatory to the agreement for arbitration. The Special Term did, however, accept the claim of the petitioners that Premier was owned by one or more of the individual respondents. The petitioners appeal from so much of the order as denied relief as to Premier.

We are confronted with two questions. First, whether the failure of a nonsignatory to an arbitration agreement to apply for a stay of arbitration within 10 days after the service of a demand for arbitration binds the nonsignatory to the arbitration. Second, whether a corporation not a signatory to an arbitration agreement, but owned or dominated by one or more parties to the agreement, can be compelled to submit to arbitration.

Under the provisions of the Civil Practice Act, the first question was considered tangentially (*Schafran & Finkel* v. *Lowenstein & Sons*, 280 N. Y. 164; *Matter of Hesslein & Co.* v. *Greenfield*, 281 N. Y. 26). In *Schafran & Finkel* the court framed the issue as follows (p. 167): " One who has never made a contract to arbitrate, upon receiving an informal letter directing him to arbitrate a purchase of goods which he never made, may be mulcted in damages by an award unless, within ten days after receiving such notice, he applies to the court for an injunction or a stay." The court did not undertake to determine the impli-

cations of the issue directly, for it found that the notice to proceed to arbitration was insufficient on its face and held that, accordingly, the nonsignatory would not be forced to arbitration because of its default in moving for a stay. In *Hesslein* (*supra*), too, the court declared the notice insufficient, and did not meet the issue whether a nonsignatory might unwittingly fall into arbitration by ignoring a notice to arbitrate.

The provisions of the Civil Practice Act which posed the dilemma in *Schafran & Finkel* and *Hesslein* were not incorporated in our present practice statute and we think there is significant language in the CPLR which avoids the potential injustice described in the excerpt above from *Schafran & Finkel.* The statute now provides (CPLR 7503, subd. [c]) : " (c) Notice of intention to arbitrate. A party may serve upon another party a notice of intention to arbitrate, specifying the agreement pursuant to which arbitration is sought and the name and address of the party serving the notice, or of an officer or agent thereof if such party is an association or corporation, and stating that unless the party served applies to stay the arbitration within ten days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time. Such notice shall be served in the same manner as a summons or by registered or certified mail, return receipt requested. An application to stay arbitration must be made by the party served within ten days after service upon him of the notice or he shall be so precluded. Notice of such application shall be served in the same manner as a summons or by registered or certified mail, return receipt requested."

When the statute speaks in terms that " a party may serve upon another party " a notice of arbitration, the natural connotation of the word " party " is that of one who is a party to the contract to arbitrate. If a nonparty was intended by the Legislature to be thrust into arbitration by mere inaction, the broader term " person " should have been used. Words in statutes should be given their ordinary meaning and not extended to accomplish untoward results (cf. *People* v. *Shafer,* 30 A D 2d 213, 216). A stranger to a contract would not be expected to anticipate involvement in arbitration simply because he allowed 10 days to lapse after the receipt of a notice to arbitrate (cf. *Ehrlich* v. *Drake Constr. Corp.,* 92 N. Y. S. 2d 711). Usually, the arbitral process, not subject to legal rules, cannot be put into motion unless the person against whom the proceeding is aimed has clearly committed himself to that kind of determination of a dispute (*Sherwood Vil. Co-op. A* v. *Had-*

*Ten Estates Corp.*, 29 A D 2d 771; *Matter of Levin-Townsend Computer Corp.* [*Holland*], 29 A D 2d 925). Hence, we should not ascribe to the Legislature an intention to inflate the words of the statute beyond their ordinary understanding.[1]

Indeed, if the statute is not so construed, a constitutional infirmity is broached. In *Schafran & Finkel* v. *Lowenstein & Sons* (280 N. Y. 164, 171, *supra*) it was said that due process would be infringed if a nonsignatory were barred from raising the lack of a contract to arbitrate by reason of a failure to seek a stay within 10 days after the service of a notice to arbitrate. As Chief Judge CARDOZO put it in *Matter of Finsilver, Still & Moss* v. *Goldberg, Maas & Co.* (253 N. Y. 382, 391–392): "In the absence of a contract expressing a consent to arbitrate, an award by an arbitrator is an act of usurpation. Nowhere does the statute say that its quality shall be different. As an act of usurpation, it is subject to be challenged whenever and wherever it is put forward by the usurper as a source of rights and duties."

We answer the first question raised by this appeal, therefore, by holding that a nonsignatory is not bound to enter into arbitration under a contract providing for that process, even though he ignores a notice to arbitrate.[2]

The second question, we think, requires a factual determination. Though both the notice to arbitrate and the petition claim that Premier, as it is phrased, is the alter ego of the individual respondents, and the Special Term apparently so found, nothing before us but the bald assertion supports that conclusion. A hearing should be held at the Special Term for the purpose of deciding whether in fact Premier is owned or dominated by one or more of the respondent signatories to the agreement (cf. *Matter of International Assn. of Machinists AFL-CIO* [*Pivot Punch & Die Corp.*], 34 Misc 2d 645). A signatory to a contract providing for arbitration may not elude his obligation by masking himself under a corporate identity.

The order should accordingly be reversed insofar as appealed from, on the law, and the proceeding should be remanded to the Special Term for the purpose of conducting an evidentiary hear-

1. It is reasonable, on the other hand, to apply CPLR 7503 (subd. [c]) preclusively against an admitted signatory who alleges the nonfulfillment of a condition precedent (*Langemyr* v. *Campbell*, 23 A D 2d 371) for a rescission or fraud in the inducement (*MacNamara* v. *Doubleday*, 270 App. Div. 645). In these cases the signatory is in possession of all the facts and has a duty to speak promptly.

2. By so holding we do not depart from the rule that an assignee of a contract containing an arbitration clause may enforce arbitration against a signatory (*Matter of S & L Vending Corp.* v. *52 Thompkins Ave. Rest.*, 26 A D 2d 935).

ing to determine whether Premier is owned or dominated by one or more of the respondent signatories to the agreement, with costs to abide the event. We have not considered the questions of fact.

RABIN, Acting P. J., MARTUSCELLO, LATHAM and BRENNAN, JJ., concur.

Order reversed insofar as appealed from, on the law, and proceeding remanded to the Special Term for the purpose of conducting an evidentiary hearing to determine whether respondent Premier Estate Planners, Inc. is owned or dominated by one or more of the respondent signatories to the agreement to arbitrate, with costs to abide the event. The questions of fact have not been considered.