Matter of Village of Walden v Teamsters Local Union No. 445 (2025 NY Slip Op 05090)

Matter of Village of Walden v Teamsters Local Union No. 445

2025 NY Slip Op 05090

Decided on September 24, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 24, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
VALERIE BRATHWAITE NELSON
DEBORAH A. DOWLING
LOURDES M. VENTURA, JJ.

2023-04708
 (Index No. 3620/22)

[*1]In the Matter of Village of Walden, appellant,
v
Teamsters Local Union No. 445, respondent.

Feerick Nugent MacCartney PLLC, South Nyack, NY (Brian D. Nugent and Dylan Lockyer of counsel), for appellant.
Barnes, Iaccarino & Shepard LLP, Elmsford, NY (Steven H. Kern of counsel), for respondent.

DECISION & ORDER
In a proceeding pursuant to CPLR article 75 to permanently stay arbitration, the petitioner appeals from an order of the Supreme Court, Orange County (Maria S. Vazquez-Doles, J.), dated April 5, 2023. The order denied the petition to permanently stay arbitration and granted the cross-petition to compel arbitration.
ORDERED that the order is reversed, on the law, with costs, the petition to permanently stay arbitration is granted, the cross-petition to compel arbitration is denied, and the arbitration is permanently stayed.
The issue in this appeal is whether the respondent, Teamsters Local Union No. 445 (hereinafter Local 445), had the authority to demand arbitration under the terms of a collective bargaining agreement (hereinafter the CBA) between the petitioner, Village of Walden, and the Village of Walden Police Benevolent Association (hereinafter the Association). For the reasons that follow, we conclude that Local 445 did not have the authority to demand arbitration, as it was not a party to the CBA between the Village and the Association. We therefore conclude that the Supreme Court should have granted the Village's petition to permanently stay arbitration and denied Local 445's cross-petition to compel arbitration.
In 2009, the Association, a labor organization, entered into an "AFFILIATION AGREEMENT" with Local 445, a labor union. Under the affiliation agreement, the Association and Local 445 agreed, among other things, that the Association would pay dues to Local 445 and Local 445 would provide specific listed services "at the request of the Association." Local 445's services included pursuing arbitrations of Association members' "meritorious claims as determined by the Association" (emphases added), for benefits pursuant to General Municipal Law § 207-c.
Thereafter, the Association entered into the CBA with the Village. The first page of the CBA identifies the CBA as an "AGREEMENT Between VILLAGE OF WALDEN and VILLAGE OF WALDEN POLICE BENEVOLENT ASSOCIATION, INC." Article 1, section 1, of the CBA provides that the Village recognizes the Association "as the sole and exclusive [*2]representative for all full-time and part-time police officers . . . employed by the Village," subject to certain exceptions, "for the purpose of negotiating collectively in determination of all matters relating to wages, hours of work, working conditions, benefits, grievances and employment." Article 1, section 2, states that "[t]he Village agrees that the Association shall be guaranteed unchallenged representation status until the expiration of this Agreement."
Article 4 of the CBA, governing compensation, establishes a procedure "to regulate the application for, and the award and/or termination of," General Municipal Law § 207-c benefits for Village police officers injured in the line of duty. Under this procedure, an injured police officer, i.e., the claimant, or the claimant's representative must file a written application for General Municipal Law § 207-c benefits within 10 days after the incident giving rise to the claimant's alleged injury or within 10 days after the claimant becomes aware of the alleged injury, whichever is later. The Village's designated claims manager is then required, within a reasonable time, to issue a written determination as to whether the claimant is entitled to General Municipal Law § 207-c benefits. The procedure also authorizes a hearing at the claimant's request before a neutral hearing officer. In addition, article 13 of the CBA sets forth a three-step grievance procedure for challenging, inter alia, unfavorable determinations of applications for General Municipal Law § 207-c benefits. In Steps 1 and 2, respectively, the claimants themselves elect whether to present a grievance to the Chief of Police, and subsequently whether to appeal an unsatisfactory decision to the Village Manager. In Step 3 of the grievance procedure, however, it is the Association—not the claimant—that elects whether to "appeal an unsatisfactory decision of the Village Manager by submitting a Demand for Arbitration to the New York State Public Employment Relations Board ([hereinafter] PERB)."
This exclusive role of the Association is further reflected in the language of the signature page of the CBA. The signature page of the CBA includes a statement that the "parties have caused this Agreement to be executed by their authorized representatives," and directly underneath this statement, two entities are listed in all capital letters: on the left, "VILLAGE OF WALDEN," and on the right, "VILLAGE OF WALDEN POLICE BENEVOLENT ASSOCIATION, INC." Below the names of those two entities is a date line, reflecting that the CBA was executed on July 12, 2015. Beneath the date line are two columns of signature lines: on the left, under the heading "For the Village," appear the typewritten names "Susan Rumbold, Mayor," and "John Revella, Village Manager," and on the right, under the heading "For the P.B.A./UNION," appear the typewritten names "Robert Montanaro, P.B.A. President," and "Thomas Miller, Local 445." Each of these four typewritten signature lines bears a handwritten signature above it.
In 2021, the Village and the Association executed a "MEMORANDUM OF AGREEMENT" (hereinafter the 2021 agreement) extending the CBA, acknowledged by both parties to have expired on May 31, 2018, to cover the period from June 1, 2018, through May 31, 2025. The 2021 agreement incorporated certain modifications to the CBA, none of which affected the grievance and arbitration provisions thereof. The 2021 agreement bears two signatures, that of the Village Manager and that of the Association's president. Notably, the 2021 agreement does not include a signature of any representative of Local 445.
The events giving rise to this litigation occurred during the period covered by the 2021 agreement. In March 2022, the Village's claims manager issued a determination on an application dated June 14, 2021, for General Municipal Law § 207-c benefits for a certain Village police officer who claimed to have been injured after falling from a chair on which he was sitting (hereinafter the March 2022 determination). The claims manager, among other things, determined that the police officer's alleged injuries arising from the occurrence were fully resolved as of July 26, 2021, awarded the police officer General Municipal Law § 207-c benefits for a six-week period, and recommended that the police officer be directed to return to full duty. In April 2022, Local 445 wrote a letter on the police officer's behalf to the claims manager appealing the March 2022 determination and requesting a hearing. Local 445 then purported to present a Step 1 grievance on behalf of the police officer in May 2022, followed by a Step 2 grievance in June 2022. The Village responded to Local 445's correspondence, asserting, inter alia, that the proper procedures for presenting Step 1 and Step 2 grievances had not been followed. On June 16, 2022, Local 445 filed [*3]a Step 3 demand for arbitration with PERB, in its own name, to arbitrate the grievance between the police officer and the Village.
On July 6, 2022, the Village commenced this proceeding to permanently stay arbitration on the ground, among other things, that Local 445 is not a proper party authorized to demand arbitration under the CBA. Local 445 cross-petitioned to compel arbitration, contending, inter alia, that it had the authority to demand arbitration.
In an order dated April 5, 2023, the Supreme Court denied the petition and granted the cross-petition. The court rejected as "unavailing and without merit" the Village's contentions that Local 445 "was not the proper party" to present a grievance and that "only the Association (PBA) has the authority to appeal at the Step 3 stage." The court noted that in 2021, Local 445 had previously "litigated in its own name" another proceeding involving the same police officer, and in that litigation, the Village had failed to argue that Local 445 was not a proper party to present a grievance. The court reasoned that the Village had "thus conced[ed]" that Local 445 was "a proper party." The court further reasoned that Local 445 was "inextricably bound to the workings of the CBA including the arbitration provisions of the grievance procedure." The Village appeals.
"[O]ne who is a party to [a] contract to arbitrate" may serve upon another party to that contract a demand for arbitration or a notice of intention to arbitrate (Glasser v Price, 35 AD2d 98, 100; see CPLR 7503[c]). The right to demand arbitration is generally reserved to the designated parties to an agreement to arbitrate (see County of Westchester v Mahoney, 56 NY2d 756; Matter of Town of New Castle v L'Eplattenier, 236 AD2d 415, 416). "Generally, the right to compel arbitration does not extend to a nonparty unless the agreement itself so provides" (County of Onondaga v U.S. Sprint Communications Co., 192 AD2d 1108, 1109). "'A party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate'" (Matter of Jalas v Halperin, 85 AD3d 1178, 1182 [internal quotation marks omitted], quoting God's Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP, 6 NY3d 371, 374; see Matter of Waldron [Goddess], 61 NY2d 181).
Importantly, in the case at bar, Local 445 does not contend that it filed its demand for arbitration on behalf of the Association or that it was acting as the Association's agent when it filed the demand. Rather, Local 445 has consistently argued, both before the Supreme Court and on appeal, that "Local 445 as such" (emphasis added) is entitled to demand arbitration under Step 3 of the CBA's grievance procedure because Local 445 is a "party" to the CBA between the Village and the Association. Accordingly, this appeal does not implicate the Association's right to be represented by Local 445, whether it be in arbitration proceedings, in contract negotiations, or otherwise. The record contains no evidence that the Association ever requested or authorized Local 445 to submit a demand for arbitration on the Association's behalf concerning the subject police officer. Rather, this appeal turns on Local 445's assertion that it is entitled, in its own words, to stand "in the shoes" of the Association "as a party to the CBA" and to demand arbitration under Step 3 of the grievance procedure in its own name.
However, the record does not support Local 445's contention that it is a party to the CBA. Local 445 relies on the fact that its representative's signature appears on the final page of the CBA. However, the presence of that signature alone is insufficient to confer upon Local 445 the status of a party to the agreement. Not every entity which affixes its signature to a contract will be deemed a party to that contract (see e.g. Selinger Enters., Inc. v Cassuto, 50 AD3d 766, 767; D'Angelo v State of New York, 285 App Div 29, 32), and the signatures on a contract "must be read, like any other portion of the instrument, not in isolation, but in the context of the instrument as a whole" (150 Broadway N.Y. Assoc., L.P. v Bodner, 14 AD3d 1, 7). It is not uncommon for a contract to include signature lines both for the parties and the parties' respective legal representatives (see e.g. In re Artha Mgt., Inc., 91 F3d 326, 330 [2d Cir]).
Here, it is clear from the natural reading of the CBA as a whole that the Village and the Association are the only two parties to the CBA. The title page identifies the CBA as an "AGREEMENT Between" the Village and the Association, and the body of the CBA defines the rights and responsibilities of the Village and the Association without any reference to Local 445. [*4]The first section of the CBA expressly states that the Association is "the sole and exclusive representative" of Village police officers in grievance proceedings. Although the signature page of the CBA includes a signature line for "Thomas Miller, Local 445" on behalf of the "P.B.A/UNION," a natural reading indicates that Miller signed the CBA, together with "Robert Montanaro, P.B.A. President," as one of the two "authorized representatives" of the Association, just as "Susan Rumbold, Mayor," and "John Revella, Village Manager," signed as the authorized representatives of the Village. In light of the numerous indicators that the Village and the Association are the intended parties to the CBA, coupled with the statement on the signature page that the "parties have caused this Agreement to be executed by their authorized representatives" (emphases added), we cannot agree with our dissenting colleague's conclusion that Local 445 signed the agreement "in its own right."
Moreover, the CBA bearing Miller's signature on behalf of Local 445 expired in 2018, and the 2021 agreement does not bear a signature on Local 445's behalf. Notably, the 2021 agreement does not acknowledge Local 445 as a party to the CBA. Instead, the 2021 agreement characterizes the CBA as an agreement between the Village and the Association.
The conclusion that Local 445 is not a party to the CBA between the Village and the Association is further supported by the affiliation agreement governing the relationship between Local 445 and the Association. We do not agree with our dissenting colleagues' statement that Local 445 represents the Association and its members "in all labor-related and collective bargaining matters" (emphasis added), as the affiliation agreement contains no such language. Despite the position taken by Local 445 before the Supreme Court, where it refused to "acknowledge that its role is in any way limited as a representative of the [Association]," the affiliation agreement between the Association and Local 445 defines the scope of the services to be provided by Local 445 and explicitly states that such services shall be provided only at the Association's request. These services include assistance with the arbitration of "meritorious" claims for General Municipal Law § 207-c benefits, "as determined by the Association." The affiliation agreement underscores the conclusion that the Association, and not Local 445, has the authority to determine whether and when to pursue arbitration of a particular claim for General Municipal Law § 207-c benefits.
The record likewise does not support Local 445's contention that past practices demonstrate that the Village regarded Local 445 as a party to the CBA. On the contrary, the record reflects that Local 445 departed from past practices when it served the arbitration demand at issue in its own name, rather than in the name of the Association. In at least three prior employee grievances, the demand for arbitration identified the Association as the "Name of Organization" demanding arbitration, and separately listed Local 445 as the "[r]epresentative to whom PERB should direct correspondence." By contrast, in the case at bar, the demand for arbitration lists Local 445 itself as the "Name of Organization" demanding arbitration. Neither the form demanding arbitration nor the accompanying cover letter contains any reference to the Association.
Contrary to Local 445's contention, the correspondence sent by Local 445 to the Village also does not demonstrate that the Village recognized Local 445 as the party authorized to submit a Step 3 grievance. The correspondence cited by Local 445 pertain to Step 1 and Step 2 of the grievance procedure and indicates that Local 445 was purporting to act on behalf of the injured police officer during those initial steps. Moreover, notably, one of the letters from Local 445 to the Village described the CBA as an agreement "with [the Association]," not as an agreement with Local 445.
The record also does not support the Supreme Court's conclusion that the Village "conced[ed]" in a prior litigation that Local 445 was a proper party to demand arbitration. The record reflects only that the Village previously objected to arbitration on grounds other than the ground now asserted on this appeal. As the Village correctly contends, the Village is not collaterally estopped from advancing an argument in this litigation based upon its failure to raise it in another litigation (see Ryan v New York Tel. Co., 62 NY2d 494, 500). To the extent that the Village's failure to object to Local 445's standing in a prior litigation could be deemed evidence of the parties' custom and practice in interpreting and enforcing the CBA, that interpretation, which was reached [*5]by the court herein, is belied by the record. As discussed above, prior demands for arbitration reflect that the Association was the party demanding arbitration, with Local 445 solely acting as an agent of the Association.
Finally, as a policy matter, if this Court were to accept Local 445's contention that it is a "party" to the CBA, such a determination could have broader implications beyond merely permitting Local 445 to demand on behalf of an individual police officer that the Village arbitrate a particular claim. If recognized as a purported "party" to the CBA, such recognition could serve as the basis for Local 445 to potentially assert additional rights reserved to the Association under the CBA, including "activities concerning wages, hours of work, working conditions, [and] benefits," or to otherwise usurp the Association's role as "the sole and exclusive representative for all full-time and part-time police officers" of the Village. There is no evidence in the record that the Association has delegated such broad authority upon Local 445 to act on behalf of the Association's members. To treat Local 445, in effect, as the alter ego of the Association would be an untenable result based on the record before this Court.
In summary, Local 445, on its own behalf, cannot compel the Village to arbitrate, as "[t]here is no writing in the record requiring arbitration of disputes between these parties" (Esquire Div. of L. Greif & Bros. [Div. of Genesco] v Finley, 54 AD2d 869, 869). Accordingly, the Supreme Court should have granted the Village's petition to permanently stay arbitration and denied Local 445's cross-petition to compel arbitration.
DILLON, J.P., CHAMBERS and VENTURA, JJ., concur.
DOWLING, J., dissents, and votes to affirm the order, with the following memorandum, in which BRATHWAITE NELSON, J., concurs:
In my view, the petitioner, Village of Walden, should be compelled to arbitrate the subject grievance with the respondent, Teamsters Local Union No. 445 (hereinafter Local 445). Therefore, respectfully, I dissent.
Pursuant to an affiliation agreement executed in 2009, Local 445 represents the Village of Walden Police Benevolent Association, Inc. (hereinafter the Association) and its members in all labor-related and collective-bargaining matters, including entitlements to General Municipal Law § 207-c benefits and the arbitration of grievances. It is undisputed that the Village has historically and repeatedly recognized Local 445's authority in this regard. In 2015, Local 445, along with the Association and the Village, executed a collective bargaining agreement (hereinafter the CBA) between the Village and the Association covering the period from June 1, 2013, through May 31, 2018. The CBA contained a grievance procedure to resolve disputes between the Village and the Association's members, including the arbitration of unresolved grievances. The subject grievance and arbitration provisions permitted continuation of "[a]ll past practices" and provided that the Association may appeal an unresolved grievance by submitting a demand for arbitration. By memorandum of agreement executed on July 26, 2021, the CBA was extended to include the period from June 1, 2018, through May 31, 2025, with certain modifications. The grievance and arbitration provisions of the CBA were not affected by the extension.
In March 2022, the Village terminated General Municipal Law § 207-c benefits for a certain Village police officer who was a member of the Association. In June 2022, during the extension period in which the CBA, as modified by the memorandum of agreement, remained in effect, Local 445 filed a demand for arbitration of a grievance between the police officer and the Village pursuant to the CBA. Local 445's demand for arbitration alleged that the Village had breached the CBA by failing to hold a hearing regarding termination of the police officer's General Municipal Law § 207-c benefits and by failing to continue to provide those benefits pending the hearing.
Thereafter, the Village commenced this proceeding to permanently stay arbitration on the ground, inter alia, that Local 445 is not a proper party authorized to demand arbitration under [*6]the CBA. Local 445 filed a cross-petition to compel arbitration, asserting that it is authorized to demand arbitration under the CBA as the bargaining representative of the Association and its members and that the demand for arbitration was filed in accordance with the parties' past practices. In an order dated April 5, 2023, the Supreme Court denied the petition and granted the cross-petition. The Village appeals.
The right to demand arbitration is generally reserved to the designated parties to an agreement to arbitrate (see County of Westchester v Mahoney, 56 NY2d 756; Matter of Town of New Castle v L'Eplattenier, 236 AD2d 415, 416). "'A party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate'" (Matter of Jalas v Halperin, 85 AD3d 1178, 1182 [internal quotation marks omitted], quoting God's Battalion of Prayer Pentecostal Chuch, Inc. v Miele Assoc., LLP, 6 NY3d 371, 374).
Here, I do not agree with my colleagues in the majority that the Village may not be compelled to arbitrate the subject grievance with Local 445. Rather, under the circumstances of this particular case, I find the record more than adequate to support the Supreme Court's determination that Local 445 is not precluded from invoking the arbitration clause of the CBA on behalf of the Association and its members. Not only is Local 445 the undisputed bargaining representative of the Association and its members with regard to the CBA, but Local 445 signed the CBA in its own right under the section titled "For the P.B.A./UNION" (cf. Selinger Enters., Inc. v Cassuto, 50 AD3d 766, 767). Moreover, there is nothing in the record to indicate that Local 445 acted outside the confines of its relationship with the Association in filing the demand for arbitration (see generally Hirschfeld Prods. v Mirvish, 218 AD2d 567, 569, affd 88 NY2d 1054; cf. generally County of Westchester v Mahoney, 56 NY2d 756; Matter of Jalas v Halperin, 85 AD3d at 1181-1182; Matter of Gonzalez v County of Orange Dept. of Social Servs., 250 AD2d 849, 850; County of Onondaga v U.S. Sprint Communications Co., 192 AD2d 1108, 1109; Esquire Div. of L. Greif & Bros. [Div. of Genesco] v Finley, 54 AD2d 869, 869; Glasser v Price, 35 AD2d 98, 100-101; Matter of Sholgen [Lipsett, Inc.], 14 Misc 2d 296, 296-297 [Sup Ct, NY County]).
Based upon the prior negotiations in this matter between Local 445 and the Village, the proffered arguments by the Village to stay arbitration appear disingenuous and not to be asserted in good faith. Accordingly, I find that the Supreme Court properly denied the Village's petition to permanently stay arbitration and granted Local 445's cross-petition to compel arbitration, and vote to affirm the order.
ENTER:
Darrell M. Joseph
Clerk of the Court